Opinion filed January 17, 2008











 
 
  
 
 







 
 
  
 
 




Opinion filed January 17,
2008

 

 

 

 

 

 

                                                                        In The

                                                                              

    Eleventh
Court of Appeals

                                                                   __________

 

                                                          No. 11-06-00102-CR

                                                       ________

 

                             ROBIN
EUGENE OLIVER JR., Appellant

                                                             V.

                                        STATE
OF TEXAS, Appellee

 



 

                                           On
Appeal from the 3rd District Court

                                                       Anderson
County, Texas

                                                    Trial
Court Cause No. 27196

 



 

                                                                   O
P I N I O N

 

Robin
Eugene Oliver Jr. appeals his convictions by a jury of the offenses of
aggravated assault and unlawful possession of a firearm by a felon.  The trial
court, finding enhancement paragraphs to be true, assessed his punishment at
seventy-five years in the Texas Department of Criminal Justice, Institutional
Division, for the offense of aggravated assault and at twenty years in the
Texas Department of Criminal Justice, Institutional Division, for the offense
of unlawful possession of a firearm by a felon.  He contends in three issues
that the evidence was legally and factually insufficient to support his
convictions, that the trial court abused its discretion in permitting hearsay
testimony through the State=s
witnesses during the punishment phase of trial, and that he was denied
effective assistance of counsel because there was a patently fatal conflict of
interest due to his counsel=s
representation of other defendants in the same case.  We affirm.








In
order to determine if the evidence is legally sufficient, the appellate court
reviews all of the evidence in the light most favorable to the verdict and
determines whether any rational trier of fact could have found the essential
elements of the crime beyond a reasonable doubt. Jackson v. Virginia,
443 U.S. 307, 319 (1979).  To determine if the evidence is factually
sufficient, the appellate court reviews all of the evidence in a neutral light.
Watson v. State, 204 S.W.3d 404, 414 (Tex. Crim. App. 2006) (overruling
in part Zuniga v. State, 144 S.W.3d 477 (Tex. Crim. App. 2004)); Johnson
v. State, 23 S.W.3d 1, 10-11 (Tex. Crim. App. 2000); Cain v. State,
958 S.W.2d 404, 407-08 (Tex. Crim. App. 1997); Clewis v. State, 922
S.W.2d 126, 129 (Tex. Crim. App. 1996). Then, the reviewing court determines
whether the evidence supporting the verdict is so weak that the verdict is
clearly wrong and manifestly unjust or whether the verdict is against the great
weight and preponderance of the conflicting evidence. Watson, 204 S.W.3d
at 414-15; Johnson, 23 S.W.3d at 10-11.

To
prove the unlawful possession of contraband, the State must prove that the
accused exercised control, management, or care over the contraband and knew
that the matter possessed was contraband.  Poindexter v. State, 153
S.W.3d 402, 405 (Tex. Crim. App. 2005).  When the accused is not in exclusive
possession of the place where the contraband is found, it cannot be concluded
that the accused had knowledge of and control over it unless there are
additional facts and circumstances that affirmatively link the accused to the
contraband.  Id. at 406.

Daniel
T. Mogan testified that he is a sergeant with the Palestine Police Department. 
He said that on January 26, 2004, he was dispatched to a residence because of
shots fired there.  He indicated that he observed five shell casings on the
front porch.  He stated he knew appellant was at the residence because he spoke
to him.  He said that, when he asked a woman at the residence about the shell
casings, she looked for a gun but failed to find it.  He related that he saw
two more shell casings when she moved a chair.








Sergeant
Mogan testified that, while examining the exterior of the residence, he found a
spent shotgun casing on the right side of the house in the driveway.  He
indicated there were no bullet holes in either the residence or the residence
adjacent to it.  He said that an individual named Sharon Sanders pulled up to
the residence in a vehicle that had several bullet holes in the driver=s door.  He related that he
learned that the vehicle had been parked in front of the house at the time of
the shooting.  He acknowledged that neither the complainant nor his companions
were at the scene.          Steven McDaniel testified that he was a corporal
with the Palestine Police Department.  He said he also responded to a dispatch
to go to the residence.  He indicated that he was shown shell casings along the
porch and a shotgun shell casing on the north side of the house.  He stated
that he also observed two shell casings just inside the front door.  He
identified other .380 caliber shell casings in the area of the porch and a
shotgun shell casing and wadding, which were located in the middle of the front
yard.  He related that he saw appellant and his mother inside the house.  He
asserted that it looked like some bullets had gone into a hill on the opposite
side of the road in the embankment.  He said there were a couple of bullets
found on the ground across the street.       Corporal McDaniel testified that,
when he asked appellant=s
mother who had fired a gun that evening, she claimed that she did.  He
indicated that he performed a gun residue test on her.  He said that appellant
told him that he had not fired a gun.  Corporal McDaniel said he also performed
a gun residue test on appellant.

Corporal
McDaniel testified that officers conducted a search of the residence after
obtaining a search warrant.  He indicated that, in searching a bedroom he
identified as bedroom one, the officers found men=s
clothing, as well as a few photographs belonging to appellant and
correspondence addressed to him.  He stated that in bedroom two they found ID
cards of a Gerry or Gary Smith as well as correspondence addressed to him.  He
insisted that he believed that bedroom one was appellant=s bedroom.

Corporal
McDaniel said that in searching bedroom one he found .9 millimeter bullets,
.357 bullets, a box of .380 bullets with five remaining, a box of Winchester
.40 caliber ammunition, a small bag containing ammunition for a .357 handgun,
and a loaded Marlin .22 rifle.

Brian
Wharton testified that he is the assistant chief of police for the City of
Palestine.  He indicated that on the occasion in question he directed that the
residence be secured until a search warrant could be procured.  He said that
after doing so he went to the hospital where he observed the complainant.  He
related that the complainant was bandaged in the face and eyes, had small
puncture wounds in his face, and had some swelling on a portion of his face. 
He stated that no gunshot residue test was performed on the complainant. 
Assistant Chief Wharton confirmed the finding of the ammunition and the .22
rifle in bedroom one, which he believed to be appellant=s bedroom.  Assistant Chief Wharton testified
that he obtained two .380 bullets from a berm across the street from the
residence.








Demond
Owens testified that she was the girlfriend of John Venable and the aunt of the
complainant.  She also indicated that she was appellant=s cousin.  She related that on the day in
question, after Venable made a phone call to appellant, she and Venable went to
appellant=s house at
about 8:00 or 9:00 p.m.  She said appellant had a room in the back of the
house.  She said that she and Venable stayed at the residence waiting for appellant
because he was not there.

Demond
testified that, after appellant arrived, Venable and some others went to the
back bedroom.  She indicated that, when they came back, Venable had a gash in
his forehead and said to appellant, AYou
didn=t have to do this
to me.@  She related
that, when she asked appellant what was going on, he replied, ADon=t worry about it, cuz.  Don=t worry about it.  It=s all taken care of now. It=s paid for.@  She stated that appellant=s mother told her that
Venable owed appellant money for some stuff he got.  Demond said she guessed
they were talking about dope.

Demond
testified that she and Venable then went to the apartment of her niece, Dana
Owens. She said that the complainant was there.  She indicated that, when the
complainant asked Venable what had happened to his face, he told the
complainant that appellant had hit him with a pistol.  She stated that the
complainant hollered, AWell,
let me - - we are fixing to go see what is going on.  I want to know exactly
why he hit him.@  She
related that at that time the complainant and Venable went to appellant=s house.  She said that
later, after the complainant and Venable returned, Venable decided to go back
again because the first time they could not get appellant to come out.  She
indicated that she, someone named Rhonda, Wavon Owens, and the complainant also
went over to appellant=s
house.  She said none of the four had a gun.  

Demond
testified that, when they arrived at appellant=s
house, she got out and knocked on the door.  She said that appellant=s mother, after answering
the door, said she wanted to talk to the complainant.  When Demond called the
complainant in the yard, Aeverybody
run out of the house on us.@ 
She stated that appellnat came out of the house first and then Aa little short dude.@  She said that appellant,
who had a gun in his back pocket, hollered, AOh,
you=ve been looking
for me?  Here I go talking noise.@ 
She stated that the complainant saw Marvin Gross with a shotgun.  She related
that, as they were backing out of the yard, the shooting started.  She said she
heard a shotgun first.  She acknowledged that she was not sure whether
appellant pulled his gun.








Venable
testified that he had been together with Demond for twelve years and that they
had three children.  He recounted that he had gone to appellant=s house on January 26,
2004.  He indicated that he and appellant went to bedroom one, where appellant
proceeded to hit him with what appeared to be an automatic pistol.

Venable
testified that, after going to someone=s
house and washing off his blood, he and the complainant went back to appellant=s house to explain to him
that Aall of this wasn=t necessary@ and that if they had a
problem they could handle it.  He said he went to the door and talked to
appellant=s mother. 
He stated that she called out for appellant, but he did not answer.  He
indicated that he did not have a gun and that, to his knowledge, the
complainant did not have one either.  He acknowledged that he was not present
when the shooting occurred.

Wavon
testified that he was the complainant=s
cousin.  He talked about going to look for Venable with Rhonda, Demond, and the
complainant.  He indicated that they drove by appellant=s house and that, when they did not see
Venable=s car, they
stopped and Demond and the complainant got out.  He recalled seeing Demond in
the yard talking to appellant, appellant=s
mother, and Patrick Davis.  He said the complainant came up by Demond.  He
recalled hearing a gunshot while they were standing there talking.

Wavon
testified that, when he got out of the SUV they had come in, Demond came back
and got in the vehicle and that Rhonda drove off.  He said he was left with the
complainant, who was yelling, AI=m hit.  I=m hit.@  He stated that he never
saw anyone who had come in the SUV with a weapon.  He indicated that appellant
had a handgun.  He related that he saw appellant firing his gun after the first
shot.  He insisted that he saw no one else shooting.  He said that he did not
see anyone with a shotgun and did not see any Awhite
guys@ there.  He
indicated that he went with the complainant to the hospital.

Juan
Antonio Rojas testified that he is a trace evidence examiner for the Texas
Department of Public Safety Crime Lab in Austin, Texas.  He indicated that no
primer gunshot residue was detected on the hands of either appellant or his
mother.  He said that residue could be absent due to someone removing the
residue or firing a weapon or using ammunition that does not deposit residue. 








Wade
Thomas testified that he is a firearms and toolmark examiner with the State of
Texas Crime Lab in Tyler.  He said that he determined that a shotgun that was
submitted by the Palestine Police Department was functional and that a
submitted shotshell was fired in it.  With respect to whether submitted
cartridge cases came from a submitted .380 pistol, tests were either negative
or inconclusive.  He concluded that all of the shell casings could have come
from the same gun or from three different guns.

The
complainant testified that he and Venable went to appellant=s house and then left after
appellant=s mother
said he was not there.  He said that, after they went to Dana=s house, Venable left. He
indicated that he went on a ride with Demond and others because he and Wavon
were going to be dropped off.  He stated he found out about halfway there that
they were going to appellant=s
house.  He indicated that, after they arrived at appellant=s house, Demond got out and
knocked on the door while he stayed in the SUV.  He related that she began
talking to appellant=s
mother, who called him out of the SUV.  He said that, as he was walking to the
porch, appellant came out and they began arguing.  He stated that appellant had
a gun in the front of his pants.  He said that Gross and Jeremiah Russell were
also there outside with guns.  He mentioned that Gross had a shotgun.

The
complainant testified that, after seeing Gross with the shotgun, he told
appellant to tell his boys to put down their guns.  He said he knew they were
appellant=s boys
because they are all Crips and that all of them were together.  He indicated
that, after he started walking back to the SUV, he was shot when he turned
around to curse at appellant.  He denied picking up any guns from the yard
after he was shot.  He said that he heard two or three other guns going off but
could not tell if appellant was shooting.  He denied telling anyone that Aa white guy@ shot him.

The
complainant acknowledged that he signed a notarized statement saying that
appellant did not assault him by any means.  He indicated that he signed the
statement because he was broke and needed money.  He insisted that he was paid
to sign it.  He acknowledged, however, that it was  Gross, not appellant, who
shot him.  We hold that the evidence is legally and factually sufficient to
support appellant=s
convictions.

Tex. Penal Code Ann. ' 46.04(a)(1) (Vernon Supp.
2007) provides:

(a)
A person who has been convicted of a felony commits an offense if he  possesses
a firearm:

 

(1)
after conviction and before the fifth anniversary of the person=s release from confinement
following conviction of the felony or the person=s
release from supervision under community supervision, parole, or mandatory
supervision, whichever date is later.  








Appellant does
not dispute that he has been convicted of a felony or that it has been less
than five years since his release from confinement or supervision.  Referring
only to the .22 rifle found under the bed in bedroom one, he contends that the
State failed to show that it was operable.  Evidence showed that appellant
struck Venable in the head with what appeared to be a pistol and that he
possessed and fired a gun at the time that the complainant was shot.  There was
also evidence from which a jury could reasonably find that appellant possessed
the .22 rifle found under the bed in bedroom one.  See Curtis v. State,
519 S.W.2d 883, 886 (Tex. Crim. App. 1975).

Appellant
does not discuss the evidence showing his possession of the handgun or
handguns, arguing, without any citation to the record, that the State related
that the firearm that he possessed was the .22 rifle found under the bed.  We
have examined the record and note that the indictment alleged that he possessed
a firearm without any limitation to the .22 rifle.  In his opening statement,
the prosecutor, discussing the assault on the complainant, stated, AYou will hear how
[appellant] had a gun, and that he is a convicted felon.@  He later referred to the rifle found under
the bed.  The charge to the jury authorized conviction in the event that
appellant possessed a firearm without limitation to the .22 rifle.  In arguing
with respect to this charge, the prosecutor in closing argument said, ADid he have a firearm? Yes.
He had a handgun in his hand.  He had .22s in his room.@  He also argued, AHow many B
who knows how many guns [appellant] had.  But he had them.  The testimony is he
had one in his hand.  He also had one in his room.@  Inasmuch as there is ample testimony that
appellant possessed a handgun, the evidence is sufficient even if the .22 rifle
were inoperable and even if that precluded it from being a firearm for purposes
of this prosecution.  We also note that, while appellant refers us to evidence
that the .22 rifle had a broken stock and scope, he does not refer us to any
evidence that these defects rendered the rifle inoperable.

With
respect to the aggravated assault charge, appellant only makes reference to the
fact that the complainant was actually shot by someone else.  While acknowledging
that he could be convicted as a party to the offense, appellant argues that no
evidence was presented by any witness that exhibited any encouragement, aid,
inducement, or affiliated involvement by him with the actual shooter.  He
insists that the State did not present any evidence that he knew of the
unlawful intent of the shooter or acted to promote and assist the shooter.  We
disagree.








Our
law provides that a person is criminally responsible for the conduct of another
if, acting with intent to promote or assist the commission of the offense, he
or she solicits, encourages, directs, aids, or attempts to aid the other person
to commit the offense.  Tex. Penal Code
Ann. '7.02(a)(2)
(Vernon 2003).  Given evidence of the sudden appearance by armed members of the
Crips gang, whom the complainant referred to as ARoy=s boys,@ (referring to appellant as
Roy), given evidence that appellant was himself armed and used his weapon in
the attack on the complainant and the other unarmed people who were with him,
and given appellant=s
statement, AHere I go
talking noise,@ the
jury could reasonably infer that he knew of the shooter=s intent and that, acting with the intent to
promote or assist the commission of the offense, he encouraged, aided, or
attempted to aid the shooter in the commission of the offense.  

In
suggesting that the evidence is insufficient, appellant relies on the cases of Wooden
v. State, 101 S.W.3d 542 (Tex. App.CFort
Worth 2003, pet. ref=d);
Hill v. State, 883 S.W.2d 765 (Tex. App.CAmarillo
1994, pet. ref=d); and
Lane v. State, 805 S.W.2d 576 (Tex. App.CDallas
1991, no pet.).  We find these cases to be distinguishable.

In
Wooden, the defendant was convicted of aggravated robbery, with the
aggravating element of the offense being the use of a deadly weapon.  Wooden,
101 S.W.3d at 545.  While acting together with others in an attempted theft,
one of three other men involved in the theft pointed a gun in the direction of
a witness who questioned the men as to what they were doing.  Id. at
544.  The court held that the evidence was insufficient to support the
defendant=s conviction
for aggravated robbery because there was no evidence that the defendant knew
about the gun being in the car or that he aided or encouraged the other
passenger to threaten the witness with a gun.  Id. at 548.  In the case
at bar, there is evidence that appellant and other members of his gang, all
carrying weapons, suddenly appeared, confronting the complainant and the other
unarmed people who were with him.  In addition, there is also evidence that
appellant discharged his gun during the fracas.  We find that the court=s holding in Wooden is
distinguishable from and not inconsistent with this opinion.








In
Hill, the defendant was convicted as a party to the first-degree felony
offense of injury to a child.  Hill, 883 S.W.2d at 766-67.  There was
evidence that the defendant=s
husband beat their child with the intent to cause serious bodily injury after
the defendant had told him that the child had been bad.  Id. at 770-71. 
The defendant was not present at the time of the beating.  Id. at
770.  The court held that the defendant was criminally responsible for her
husband=s offense only
if the evidence showed that she knew his unlawful intent when she acted to
promote or assist in his conduct.  Id. at 771.  The court concluded that
the evidence was sufficient to support the conviction, noting that, because of
her knowledge of previous abusive beatings of the children by her husband,
which had resulted in serious bodily injury, the jury could reasonably infer
that, when she told her husband that the child was bad, she knew he would beat
the child with the intent to cause serious bodily injury.  Id.

The
main distinguishing factor between appellant and the defendant in Hill is
that the defendant in that case was not present when the offense occurred and
appellant was present and participated in the armed assault by him and the
Crips gang upon the complainant and his companions, all of whom were unarmed. 
We hold that this evidence, as outlined above, was sufficient to show that
appellant knew of the unlawful intent of his associate who shot the
complainant.  We do not find the court=s
holding in Hill to be inconsistent with this opinion.

In
Lane, the defendant was convicted of the offense of unlawful possession
of a firearm by a felon.  Lane, 805 S.W.2d at 577.  The defendant
asserted that the evidence was insufficient to show that he had previously been
convicted of a felony involving an act of violence or threat of violence and
that there was a fatal variance between his indictment (which alleged that he
had previously been convicted of a felony involving an act of violence) and the
proof (which at best showed that he had been convicted of an offense involving
a threat of violence and not an act of violence).  Id.  The court held
that the evidence was sufficient where it showed that the indictment in the
prior felony alleged that the defendant threatened the complainant with
imminent bodily injury and used a deadly weapon and the defendant was convicted
as charged in the indictment.  Id. at 578.  The court concluded that
bodily injury or a threat of imminent bodily injury in the context of an
aggravated assault charge was synonymous with violence or placing in fear of
violence.  Id.

The
court in Lane also held that there was no variance between alleging that
the defendant had previously been convicted of a felony involving an act of
violence where the indictment alleged that the defendant had used a deadly
weapon and noted that, in an aggravated assault case alleging use of a deadly weapon,
the use of a deadly weapon itself constitutes an act of violence regardless of
whether the weapon was used to threaten or cause bodily injury.  Id. at
578-79.








It
is difficult to understand appellant=s
citation of the opinion in Lane because the issue discussed in that case
is not the same as that in this case.  Appellant does not cite the case in
support of his contention that the evidence is insufficient to support his
conviction for the offense of possession of a firearm by a felon; instead, he
cites it as support for his contention that the evidence is insufficient to
support his conviction for aggravated assault.  Citing Lane, he argues
that, A[i]n order to support
a conviction under the indictment as drafted herein, there should be a showing
of the infliction of >actual
violence.=@  We are sure that he is
not suggesting that there was no showing of actual violence on the part of the
shooter.  If he is suggesting that there must be a showing of actual violence
on his part, such a suggestion is inconsistent with the law of parties and with
the opinion in the case of Hill, another case cited by appellant in
support of his argument that the evidence is insufficient.  As we have noted,
Hill was convicted for the offense of injury to a child, although she was not
present when her husband caused the injury to the child.  We overrule issue
one.

Appellant
insists in issue two that the trial court erred by permitting hearsay testimony
during the punishment phase of trial, outside any appropriate exception
provided by law.  The evidence to which he refers are State=s Exhibits Nos. 85, 86, and
87.  Contrary to assertions by appellant, when Exhibits Nos. 85 and 87 were
tendered, appellant stated that he had no objections.  With Exhibit
No. 86, appellant=s
only objection was resolved, and he approved its admission into evidence. 
Nothing has been preserved for review.  Tex.
R. App. P. 33.1(a).  We overrule issue two.

Appellant
asserts in issue three that his verdict and sentencing were invalid as he was
not provided effective assistance of counsel.  He urges that his attorney=s representation of certain
co-defendants created an actual conflict of interest.  The possibility of a
conflict of interest is insufficient to impugn a criminal conviction.  Cuyler
v. Sullivan, 446 U.S. 335, 350 (1980).  In order to demonstrate a violation
of his or her Sixth Amendment rights, a defendant must establish that an actual
conflict of interest adversely affected his lawyer=s performance.  Id.  Appellant=s effort to demonstrate
that there was an actual conflict of interest is conclusory and vague.  We hold
that he has failed to establish that there was an actual conflict of interest
or that, if there were, it adversely affected his lawyer=s performance.  Appellant relies on Cuyler,
but we find that the holding in that case is not inconsistent with this
opinion.  We overrule issue three.

The
judgment is affirmed.

 

January 17, 2008                                                                      PER
CURIAM

Do not publish. 
See Tex. R. App. P.
47.2(b).

Panel consists of:  Wright, C.J.,

McCall, J., and Hill, J.[1]









[1]John G. Hill, Former Justice, Court of Appeals, 2nd
District of Texas at Fort Worth sitting by assignment.