PD-1341-14
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 5/15/2015 10:45:09 PM
Accepted 5/19/2015 2:40:05 PM
ABEL ACOSTA
CLERK

**APPELLANT REQUESTS ORAL ARGUMENT/
ORAL ARGUMENT GRANTED**

**IN THE COURT OF CRIMINAL APPEALS OF TEXAS**

_____

**No. PD-1341-14**

_____

**STACY STINE CARY, Appellant**

**v.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the Court of Appeals, Fifth District of Texas at Dallas
Court of Appeals No. 05-12-01421-CR**

**APPELLANT'S BRIEF**

FILED IN
COURT OF CRIMINAL APPEALS

May 19, 2015

ABEL ACOSTA, CLERK

John M. Helms
Texas Bar No. 09401001
BRODEN, MICKELSEN, HELMS &
SNIPES, LLP
2600 State Street
Dallas, Tx 75204
Tel: (469) 951-8496
Fax: (214) 720-9594
john@johnhelmslaw.com

ATTORNEY FOR APPELLANT,
STACY STINE CARY

## IDENTITY OF PARTIES AND COUNSEL

**A.**    <u>**Parties**</u>**.**

Defendant/Appellant:  Stacy Stine Cary

Plaintiff/Appellee:  The State of Texas

**B.**    <u>**Counsel**</u>**.**

<u>Counsel for Defendant/Appellee Stacy Stine Cary</u>:

**Appellate Counsel:**

John M. Helms
BRODEN, MICKELSEN, HELMS & SNIPES, LLP
2600 State Street
Dallas, Tx 75204

**Trial Counsel:**

Richard T. Ryczek
The Ryczek Firm, P.C.
368 West Pike Street, Suite 203
Lawrenceville, Ga. 30046

Heather J. Barbieri
Barbieri Law Firm, P.C.
5600 Tennyson Parkway, Suite 205
Plano, Texas 75024

Robert R. Smith (sentencing only)
Knox Fitzpatrick (sentencing only)
Fitzpatrick, Hagood, Smith & Uhl LLP
Chateau Plaza, Suite 1400
2515 McKinney Avenue
Dallas, Texas 75201-7600

Counsel for Plaintiff/Appellee The State of Texas:

**Appellate Counsel**:

Joseph Corcoran (lead appellate counsel)
Gretchen Merenda (lead appellate counsel before Dallas Court of Appeals)
Don Clemmer
Edward L. Marshall
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711

**Trial Counsel:**

Harry E. White
Cathy E. Chopin
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND COUNSEL……………………………….……i

TABLE OF CONTENTS……………………………………....……….........iii

INDEX OF AUTHORITIES…………………………………………....vi

STATEMENT OF THE CASE……………………………………….…1

STATEMENT REGARDING ORAL ARGUMENT………………………...1

ISSUES PRESENTED……………………………………………….....2

STATEMENT OF FACTS………………………………………….......2

SUMMARY OF ARGUMENT…………………………………...........10

ARGUMENT…………………………………………………...12

I.      STANDARD OF REVIEW AND OVERVIEW OF THE BRIBERY
        CHARGES …………………….......................................12

        A.      STANDARD OF REVIEW……………………………............12

        B.      THE BRIBERY CHARGES……………………….................13

                1.      ALL CHARGES WERE EITHER BRIBERY OR A
                        CHARGE THAT INCORPORATED
                        BRIBERY……………………………….............13

                2.      THE BRIBERY STATUTE AS CHARGED IN THIS
                        CASE…………………………………….............14

                3.      ALL BRIBERY ALLEGATIONS CHARGE THE BRIBING
                        OF MS. WOOTEN TO BECOME A CANDIDATE, TO
                        CONTINUE TO RUN FOR OFFICE, AND MAKING
                        FAVORABLE RULINGS………………………………17

II. ARGUMENTS REGARDING ISSUES PRESENTED………………...18

    A. ISSUE 1: THE COURT SHOULD REVERSE MS. CARY'S BRIBERY CONVICTIONS BECAUSE THE STATE AFFIRMATIVELY NEGATED THE ELEMENT OF BRIBERY BY SOMETHING OTHER THAN "POLITICAL CONTRIBUTIONS," AND THE EVIDENCE WAS THEREFORE INSUFFICIENT……………….….…………18

    B. ISSUE 2: THE EVIDENCE WAS INSUFFICIENT TO PROVE THE REQUISITE OFFICIAL ACTION INTENDED TO BE EXCHANGED FOR THE ALLEGED BENEFIT, AS REQUIRED BY THE BRIBERY STATUTE………….………27

    C. ISSUE 3: THE EVIDENCE WAS INSUFFICIENT TO PROVE THAT MS. CARY HAD THE REQUISITE INTENT TO COMMIT BRIBERY……………………………...……….33

    D. ISSUE 4: THE EVIDENCE WAS INSUFFICIENT TO SUPPORT MS. CARY'S CONVICTION FOR ENGAGING IN ORGANIZED CRIMINAL ACTIVITY AND MONEY LAUNDERING……………………………….……..35

        1. THE EVIDENCE OF ENGAGING IN ORGANIZED CRIMINAL ACTIVITY WAS INSUFFICIENT BECAUSE THE EVIDENCE OF THE PREDICATE OFFENSES WAS INSUFFICIENT…………………………35

            a. PREDICATE OFFENSE OF BRIBERY…...…………36

            b. PREDICATE OFFENSE OF MONEY LAUNDERING..........................................................36

            c. PREDICATE OFFENSE OF TAMPERING WITH A GOVERNMENT RECORD………………………...37

        2. THE EVIDENCE OF MONEY LAUNDERING WAS INSUFFICIENT………………………………….......41

CONCLUSION…………………………………………………....42

# INDEX OF AUTHORITIES

**Statutes/Rules:**

Texas Election Code § 251.001 ……………………………………………….…24

Texas Election Code § 251.001(2)…………………………………………..19

Texas Election Code § 251.001(3)…………………………………………..…19

Texas Election Code § 251.001(5) …………………………………………….19

Texas Government Code § 572.023(a) ……………………………………….38, 39

Texas Penal Code § 1.07 (a)(41)……………………………………………....29

Texas Penal Code § 2.02(b)……………………….….......................................20

Texas Penal Code § 7.02 (a)…………………………………………….......33, 34

Texas Penal Code § 34.01 (1)…………………………………………………14, 37

Texas Penal Code § 34.02(a)(1)……………………………………………15, 28

Texas Penal Code § 34.02(a)(2)……………………………………………15, 28

Texas Penal Code § 34.02(a)(1), (2)…………………………………1, 15, 16, 19, 26, 27

Texas Penal Code § 34.02(a)(1), (2), (3)……………………….…….………14

Texas Penal Code § 34.02(a)(1), (2), (3), (4)…………………………………14

Texas Penal Code § 34.02 (a)(4)…………………………….......……...1, 14, 37, 41

Texas Penal Code § 36.02………………………………….......…………..…1

Texas Penal Code § 36.02 (a)(1)…………………………………...14, 15, 23, 26

Texas Penal Code § 36.02(d)……………………………………….16, 19, 23, 24

Texas Penal Code § 36.09……………………………………………..………17

Texas Penal Code § 37.10 (a)(5)…………………………………………14, 37, 38

Texas Penal Code § 71.02 (a)……………………………………..…………1, 13, 35, 36

**Cases:**

*Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2012) (Cochran, J. concurring)…………………………………….....………………………………………12

*Carter v. State*, 656 S.W.2d 468 (Tex. Crim. App. 1983) (*en banc*)……………...26

*Cary v. State*, No. 05-13-01010, slip op. at 11 (Tex. App.—Dallas, March 25, 2015)…………………………………………………………………….…25, 41

 *Ex parte Thompson,* 179 S.W. 3d 549 (Tex. Crim. App. 2005)…….....……….….34

*Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011)................................12

*Hill v. State,* 883 S.W.2d 765 (Tex. App.--Amarillo 1994, pet. ref'd)……..............34

*Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007)…………….........12, 33

*Hubbard v. State*, 668 S.W.2d 419 (Tex. App—Dallas 1984, pet.granted on other grounds)……………………………………………………...……17, 33

*Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781 (1979)................................12, 33

*Martinez v. State*, 696 S.W.2d 930, 933 (Tex. App.—Austin 1985, pet. ref'd)16, 28

*McCallum v. State*, 686 S.W.2d 132, 136 (Tex. Crim. App. 1985)…...16, 28, 30, 32

*See Opokuofosu v. State*, 1998 Tex. App. LEXIS 903, *16 (Tex.App. – Texarkana 1998, pet. ref'd)…………………………………………………….38

*Pfeiffer v. State*, 363 S.W.3d 594, 599 (Tex. Crim. App. 2012)…………….…..26

*Winfrey v. State*, 2013 Tex. Crim. App. Lexis 431, 10-12 (Tex. Crim. App. Feb. 27, 2013)……………………………………...…………12, 33

## STATEMENT OF THE CASE

This is an appeal from a criminal conviction from the 366th Judicial District Court of Collin County, Texas. Following a jury trial, Appellant, Stacy Stine Cary ("Ms. Cary"), was convicted of one count of Engaging in Organized Criminal Activity under section 71.02(a) of the Texas Penal Code, six counts of bribery under sections 36.02(a)(1) and (2) of the Texas Penal Code, and one count of money laundering under section 34.02(a)(4) of the Texas Penal Code. TR 9 at 57-60.[1]

On each count, Ms. Cary was sentenced to serve ten years in prison, probated for ten years, plus thirty days of jail time. The sentences on each count run concurrently. TR10 at 187.

A divided panel of the Dallas Court of Appeals affirmed all convictions. Two justices voted to affirm. The dissenting justice would have reversed all convictions.

This Court granted a petition for discretionary review on the issues below.

## STATEMENT REGARDING ORAL ARGUMENT

Appellant respectfully requests oral argument, which the Court has already granted. This case involves multiple actors, the interplay of election law, and circumstantial evidence. Appellant believes that the facts and the application of the law are sufficiently complicated that oral argument would benefit the Court.

---

[1] TR # refers to the trial record, volume #.

## ISSUES PRESENTED

1. Whether Ms. Cary's bribery convictions should be reversed because the evidence was insufficient to prove bribery by something other than "political contributions"?

2. Whether the evidence was sufficient to prove the requisite official action intended to be exchanged for the alleged benefit, as required by the bribery statute?

3. Whether the evidence was sufficient to prove that Appellant had the requisite intent to commit bribery?

4. Whether the evidence was sufficient to support Ms. Cary's conviction for engaging in organized criminal activity and money laundering?

## STATEMENT OF FACTS

### A. Introduction.

This case involves efforts to unseat a Collin County judge who had a reputation for being vindictive, biased, and abusive. That judge, Charles Sandoval, had presided over the 380th Judicial District Court of Collin County, Texas. He was defeated in the 2008 Republican primary by a candidate named Suzanne Wooten ("Ms. Wooten" or "Judge Wooten"). There was no Democratic opponent in the general election, and Ms. Wooten therefore became judge of the 380th Judicial District Court.

In this case, the State charged that Ms. Cary, along with her husband, David Cary ("David Cary" or "Mr. Cary"), and a man who became Ms. Wooten's campaign manager, Stephen Spencer ("Mr. Spencer"), acted together to bribe Ms. Wooten. The State made these charges even though all of the alleged bribe money

Appellant's Brief--Page 2

was spent by Mr. Spencer on behalf of the Wooten campaign, none went to Ms. Wooten, all of it was invoiced to the Wooten campaign, and all of it was paid back in full by the Wooten campaign from funds that the Wooten campaign legitimately raised.

The State's bribery theory was that the Carys paid Mr. Spencer money, Mr. Spencer spent a significant percentage of it on Wooten campaign expenses, and Mr. Spencer did not invoice the Wooten campaign quickly enough. According to the State, this allowed Mr. Spencer to make some expenditures on behalf of the Wooten campaign at times when the campaign did not yet have enough money raised to cover the expenditures.

**B.    David Cary's Divorce Proceedings In Judge Sandoval's Court.**

In 2003, David Cary filed for divorce from his wife, Jennifer Cary. TR 11 at 1259 (State's Tr. Ex. 7). The case was assigned to Judge Sandoval's court. *Id.*

In the mid-2004, the parties reached a mediated settlement, and on October 5, 2004, the court approved the mediated settlement and entered a Final Divorce Decree. TR 11 at 1282 (State's Tr. Ex. 7). The Final Divorce Decree made David and Jennifer Cary Joint Managing Conservators over their two young daughters who were born prematurely and who were both special needs children. *Id.*

Barely more than six months later, however, on April 13, 2005, Jennifer Cary filed a Petition to Modify the Final Divorce Decree. TR 11 at 1353 (State's

Tr. Ex. 7). In that Petition, which was also assigned to Judge Sandoval's court, Jennifer Cary raised a dispute over the care and counseling for the two daughters. She asked the court to give her the exclusive right to designate the children's residence and to modify the visitation schedule to reduce David Cary's visitation. *Id.* After this point, the litigation became heated.

Jennifer Cary was represented by attorney Rick Robertson, who was known to be very close to Judge Sandoval and one of his strongest supporters. TR 8 at 45. During the course of the litigation, David Cary's attorney learned of what he believed were *ex parte* contacts between Mr. Robertson and Judge Sandoval. He therefore filed a motion to recuse Judge Sandoval on April 28, 2006. TR 11 at 1361 (State's Tr. Ex. 7). Ultimately, the motion was unsuccessful, and Judge Sandoval remained on the case. David Cary began to feel more and more like Judge Sandoval was biased against him and was treating him unfairly.

Judge Sandoval had a reputation in Collin County for being vindictive and abusive. Testimony in the record includes the results of an internet poll showing Judge Sandoval as being one of the five worst judges in the State of Texas and the most reversed judge in Collin County. TR 4 at 95-96. There was testimony that most lawyers in Collin County were "terrified" of Judge Sandoval and that lawyers repeatedly commented that "he's vindictive and he'll make you pay." TR 6 at 35-36; TR 8 at 45, 55.

On December 1, 2006, Judge Sandoval granted Jennifer Cary's Petition to Modify in full. He removed David Cary as Joint Managing Conservator and appointed Jennifer Cary as Sole Managing Conservator of the girls. TR 11 at 1442 (State's Tr. Ex. 7). He also awarded Jennifer Cary attorney's fees of $416,543.16. *Id.* David Cary did not appeal any aspect of this order.

On January 23, 2007, David Cary filed a Petition to Modify the child support schedules. He also requested a transfer of the matter to Dallas County, where he alleged that the children had primarily lived over the past six months. TR 11 at 1473 (State's Tr. Ex 7). Judge Sandoval denied this petition and imposed sanctions on David Cary and his lawyer.

C.     **David Cary's Attempts At Legislative Reform And His Introduction To Stephen Spencer.**

During this time, David Cary became increasingly disillusioned with the way Texas courts handle family law and parental rights issues. He began considering whether there were potential legislative solutions and talking to people in Austin.

At the same time, Stephen Spencer was talking to members of the State Legislature and their staffs about similar issues. Mr. Spencer had an interest in parental rights, and he had connections to an organization called the Texas Home School Counsel.

The General Counsel for Texas Speaker of the House Tom Craddick had been in contact with both the Carys and Mr. Spencer, and he introduced them by email because of their shared interests. TR 4 at 15-19.

In early October of 2007, Mr. Spencer drove to the Carys' home in Dallas to meet with them. TR 4 at 56-57. Mr. Spencer and the Carys discussed David Cary's interest in legislation concerning parental rights. *Id.* Mr. Spencer indicated that he knew about how the legislative process worked and thought he could help Mr. Cary. *Id.*

At around the same time, in addition to possible legislative solutions, Mr. Spencer had been discussing with Tim Lambert of the Texas Home School Council, the possibility of trying to unseat judges who were not following the law in the area of parental rights. TR 4 at 79-106. After talking to David Cary, Mr. Spencer went to Collin County and reviewed David Cary's divorce file. *Id.* He also did research on Judge Sandoval and concluded that Judge Sandoval lacked a family law background, had a very poor reputation, and was not applying the law correctly. *Id.* Mr. Spencer ultimately decided to try to find someone who could run against Judge Sandoval. *Id.* He considered other Collin County judges, but he decided to focus his efforts on Judge Sandoval. *Id.*

**D.    Stephen Spencer Recruits Suzanne Wooten To Run.**

In or around mid-November 2007, Mr. Spencer began speaking to several lawyers in Collin County about running against Judge Sandoval.  TR 4 at 110.  He was turned down several times before he contacted Suzanne Wooten.

Mr. Spencer got Ms. Wooten's name from the chairman of the Collin County Democratic Party. TR 4 at 137.  They had been trying to recruit Ms. Wooten to run against Judge Sandoval as well, but Ms. Wooten had declined, presumably because it is almost impossible for a Democrat to win in Collin County.  TR 4 137-38.

Ms. Wooten had expressed interest to others in running for judge before.  TR 8 at 19.  She was a good candidate because she had a family law background and was well-respected.  TR 4 137-140, 147-48.  One of the State's witnesses testified, for example, that she was very concerned even with appearances of impropriety. TR 8 at 22-23.

In his initial conversation with Ms. Wooten, Mr. Spencer told her that he had already lined up an experienced political consultant, which he had done, whose name was Hank Clements.  TR 4 at 149-51, 183.  He also told her that, through his contacts, including the Texas Home School Counsel, he could help get her name out, help her get endorsements, and help with grass roots support.  TR 4 at 150-51.

Ms. Wooten agreed to enter the race as a Republican and made Mr. Spencer her campaign manager.  She filed papers on January 2, 2008.  TR 4 at 144.

## E.  Ms. Wooten's Campaign.

Mr. Spencer served as Ms. Wooten's campaign manager.  He worked with Mr. Clements, who served as a strategy consultant for Ms. Wooten's campaign.  Through his company, SpenOff Strategies, Mr. Spencer paid for certain campaign expenditures, such as advertising, and sent the campaign invoices for reimbursement.  TR 4 at 237-38.  The Wooten campaign's reimbursements to Mr. Spencer's company were recorded as campaign expenditures on Ms. Wooten's campaign finance reports.  TR 11 at 2152 (Exh. 62).  Mr. Clements testified that having a campaign consultant operate this way is not unusual, that he has done that in the past, and that it is not illegal.  TR 4 at 239, 243.

Stacy Cary was a high school graduate who had worked on her family's businesses and was married to David Cary.  TR 7 at 157.  Ms. Cary had very little involvement in any of the foregoing.  The evidence at trial showed that Ms. Cary was involved with requesting or causing monetary transactions through which the Carys made payments to Mr. Spencer.  From January 4, 2008 to March 14, 2008, the total amount of payments from Ms. Cary to Mr. Spencer was $150,000.  There was no evidence that Ms. Cary had any contact with Ms. Wooten or was involved in her campaign in any way whatsoever.

According to the State, the Wooten campaign reimbursed Mr. Spencer for about $102,291.23 worth of campaign expenses that he initially paid for and later

billed the campaign. TR 7 at 185-86. All of the money that Mr. Spencer paid and invoiced to the Wooten campaign was used for real campaign expenditures. TR 9 at 44. There is no evidence of any direct or indirect transfers to Ms. Wooten, personally. The State does not contend that any of the funds were raised improperly. Indeed, all of the reimbursements to Mr. Spencer were from the Wooten campaign account and from properly raised money. TR 7 at 185-86.

**F.      Ms. Wooten Becomes Judge of the 380th Court And Promptly Recuses Herself From David Cary's Child Custody Case.**

The Republican primary was on March 4, 2008. TR 4 at 142-44. Ms. Wooten won the primary and did not have an opponent in the general election. She therefore became judge of the 380th Judicial District Court.

After taking the bench, Judge Wooten recused herself from David Cary's child custody case. She did so not because of potential bias ***in favor*** of Mr. Cary, but because she was concerned about a potential conflict of interest that could have made her appear biased ***against*** David Cary.

When David Cary's divorce/child custody case ultimately came back in Judge Wooten's court, Judge Wooten's former campaign treasurer, Alma Benavides, appeared as counsel on behalf of David Cary's ex-wife and against David Cary. TR.11 at 1734 (State Tr. Ex. 7). Because of that, Judge Wooten raised the issue of recusal herself, saying that, because of her relationship with Ms. Benavides, she was "tremendously concerned" about fairness to Mr. Cary's

Appellant's Brief--Page 9

counsel. Tr. 11 at 2460 (State Tr. Ex. 64 at 3-4). Judge Wooten ultimately asked that Ms. Benavides file a recusal motion so that she could rule on it. TR 11 at 2460 (State Tr. Ex. 64 at 15). The motion was filed, and Judge Wooten recused herself on March 4, 2009--less than a week after Ms. Benavides appeared. TR 11 at 1736 (State Tr. Ex. 7). Thus, Judge Wooten made no rulings in the case that was Mr. Cary's alleged motivation for wanting to remove Judge Sandoval.

## SUMMARY OF ARGUMENT

There was insufficient evidence to support Ms. Cary's bribery convictions. First, the sections of the bribery statute under which Ms. Cary was charged require proof beyond a reasonable doubt that Ms. Cary committed bribery by something other than a "political contribution." The State's proof at trial, however, not only failed to do so, but it affirmatively proved Ms. Cary's innocence, because the only possible benefits she conveyed were "political contributions.

Second, the Superseding Indictment alleges bribery as consideration for Ms. Wooten's decision to become a candidate, her continuing to be a candidate, and for favorable rulings. The evidence was insufficient as to each of these. Ms. Wooten's decision to become a candidate cannot support the conviction because the bribery statute does not apply to a decision to become a candidate. Continuing to run for office cannot support a bribery conviction because there no evidence to support it. There was also insufficient evidence of the commission of bribery as consideration

for favorable rulings, in particular, because there was no evidence that the alleged recipient would have known for whom to rule favorably.

Third, there was insufficient evidence that Ms. Cary had the requisite intent to commit bribery for any reason.

Fourth, there was insufficient evidence of engaging in organized criminal activity ("EOCA"), and money laundering. As to EOCA, there was insufficient evidence of the alleged predicate crimes. Two of the three alleged predicate crimes depend on bribery, and the evidence of bribery was insufficient for the reasons above. The third alleged predicate crime was tampering with a government record, but the evidence fails to show that the government record was false or that Ms. Cary had any knowledge of it whatsoever.

There was insufficient evidence of money laundering as alleged, because it requires proof of bribery, and the evidence of bribery was insufficient.

The decision in the Court of Appeals was 2-1. Justice FitzGerald dissented and would have reversed all of Ms. Cary's convictions. In Ms. Cary's husband's appeal, a unanimous panel of the Dallas Court of Appeals recently reversed all of David Cary's convictions on the same charges. That opinion is Appendix A, hereto.

The dissent in this case and the unanimous panel in David Cary's case were correct. This Court should reverse all of Ms. Cary's convictions.

# ARGUMENT

## I.

## STANDARD OF REVIEW
## AND OVERVIEW OF THE BRIBERY CHARGES

### A.    Standard of Review.

This Court has articulated the standard of review for sufficiency of the evidence as follows:

> We apply *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979), as the standard for reviewing the sufficiency of evidence. "In determining whether the evidence is legally sufficient to support a conviction, a reviewing court must consider all of the evidence in the light most favorable to the verdict and determine whether, based on that evidence and reasonable inferences therefrom, a rational fact finder could have found the essential elements of the crime beyond a reasonable doubt."

*Winfrey v. State*, 2013 Tex. Crim. App. LEXIS 431, 10-12 (Tex. Crim. App. Feb. 27, 2013) (quoting *Gear v. State*, 340 S.W.3d 743, 746 (Tex. Crim. App. 2011)).

Under this standard, "juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). "[T]here is no higher standard of appellate review than the standard mandated by *Jackson*." *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010) (Cochran, J. concurring).

**B.** **The Bribery Charges.**

    **1.** **All Charges Were Either Bribery Or A Charge That Incorporated Bribery.**

Bribery is the linchpin of every charge against Ms. Cary. The Superseding Indictment charges Ms. Cary with bribery in six substantive counts (Counts II-VII). Each bribery count involves a separate payment by Ms. Cary to Mr. Spencer.

Bribery was also a critical component of the other two charges. Count I, Engaging in Organized Criminal Activity, incorporates the same bribery allegations. In order to commit the crime of Engaging in Organized Criminal Activity, the Texas Penal Code requires, in pertinent part, proof beyond a reasonable doubt that a person "establish, maintain, or participate in a combination...to commit or conspire to commit one or more of" a list of predicate crimes. Tex. Pen. Code § 71.02(a). In this case, the State charged bribery as one of three predicate crimes. The other two are money laundering, which has bribery as its predicate offense, and tampering with a government record.

The jury was instructed that they should convict on Engaging in Organized Criminal Activity if they unanimously agreed, beyond a reasonable doubt, that Ms. Cary had established, maintained, or participated in a combination to commit or, as

a lesser included offense, conspire to commit, any of the three predicate crimes--

bribery, money laundering,[2] or tampering with a government record.[3]

Count VIII, money laundering, also stands or falls with the bribery charges. In pertinent part, the Texas money laundering statute makes it a crime if a person "knowingly...finances or invests or intends to finance or invest funds that the person believes are intended to further the commission of criminal activity." Tex. Pen. Code § 34.02(a)(4). For purposes of this case, "[c]riminal activity" means a felony offense. Tex. Pen. Code § 34.01(1). Count VIII alleges that the criminal activity was bribery. Superseding Indictment, Count VIII.

## 2. The Bribery Statute As Charged In This Case.

The Texas bribery statute has four operative subsections that delineate the crime of bribery—Tex. Pen. Code §§ 36.02(a) (1), (2), (3), and (4). Subsections (a) (1), (2), and (3) do not apply to a benefit that is "a political contribution as defined by Title 15, Election Code." Tex. Pen. Code §36.02(d). Only subsection (a)(4) applies if the benefit is a political contribution. *See id.*

Subsection (a)(4), which applies to political contributions, requires significantly more strict proof than the other subsections. Unlike subsections (a) (1), (2), and (3), in order to prove bribery involving a political contribution, the

---

[2] Tex. Pen. Code §34.02. Subsection (a)(4) was charged in this case.
[3] Tex. Pen. Code § 37.10(a)(5). The State did not charge Ms. Cary with a substantive count of tampering with a government record.

State must show "an express agreement to take or withhold a specific exercise of official discretion" and that such exercise of discretion "would not have been taken or withheld but for the benefit." Tex. Penal Code § 36.02(a)(4). Moreover, the State is required to produce "direct evidence of the express agreement." *Id.* Thus, an implied agreement and circumstantial evidence of an express agreement are not enough.

Ms. Cary was only charged under sections 36.02(a)(1) and (2). Superseding Indictment, Counts I-VIII. As set forth above, sections 36.02(a)(1) and (2) do ***not*** apply when the alleged benefit to the public servant is political contributions. Section 36.02(a)(1) states that "[a] person commits an offense if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another...any benefit as consideration for the recipient's decision, opinion, recommendation, or vote, or other exercise of discretion as a public servant, party official, or voter." Tex. Pen. Code § 36.02(a)(1).

Similarly, section 36.02(a)(2) states that "[a] person commits an offense if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another...any benefit as consideration for the recipient's decision, vote, recommendation, or other exercise of official discretion in a judicial or administrative proceeding." Tex. Pen. Code § 36.02(a)(2).

Thus, in order to prove bribery under this subsection, the State was required to prove each element of the charged subsection beyond a reasonable doubt and with proof of a "benefit" that is not a political contribution. *See* Tex. Pen. Code § 36.02(d) ("It is an exception to the application of Subdivisions (1), (2), and (3) of subsection (a) that the benefit is a political contribution as defined by Title 15, Election Code….").

The phrase "as consideration for" is particularly important in this case. Sections 36.02(a)(1) and (2), under which Ms. Cary was charged, require proof of *consideration* in the form of a decision or other exercise of discretion by a public servant or in an administrative or judicial proceeding. This Court has held that the "as consideration for" language refers to "a bilateral agreement--in effect an illegal contract to exchange a benefit as consideration for the performance of an official function." *McCallum v. State*, 686 S.W.2d 132, 136 (Tex. Crim. App. 1985).

The requisite consideration need not actually be accepted by the public official, but there must be proof that the benefit was at least offered to the public official *in exchange for the consideration*. *See Martinez v. State*, 696 S.W.2d 930, 933 (Tex. App.—Austin 1985, pet. ref'd) (holding that the bribery statute requires proof that an offer or solicitation "was made by the accused with the purpose to promote or facilitate the exchange of the benefit for the official action").

The intended exchange of a benefit in return for official action is also what distinguishes the bribery statute from the gift statute. *See* Tex. Penal Code § 36.09 ("Offering Gift To Public Servant"). Offering or conferring a benefit to a public official in return for the public official's general favor may violate the gift statute (a Class A misdemeanor), but it is not a bribe (a second-degree felony). In *Hubbard v. State*, 668 S.W.2d 419 (Tex. App—Dallas 1984, pet. granted on other grounds), for example, this Court distinguished the bribery statute from the gift statute by explaining that the gift statute "is designed to discourage generally buying the favor of public officials," whereas the bribery statute involves "consideration [and] effecting an agreement." *Id.* at 421. Accordingly, a showing of the offering or conveying of a benefit alone is not enough to prove bribery. The State must show that the benefit was offered or conferred "as consideration for" the official action.

3.   **All Bribery Allegations Charge The Bribing Of Ms. Wooten As Consideration For Becoming A Candidate, Continuing To Run For Office, And Making Favorable Rulings.**

The Superseding Indictment specifies three things for which the State claims the alleged benefits were consideration: "filing paperwork to run for Judge, proceeding and continuing with a campaign to unseat the incumbent elected Judge of the 380th Judicial District Court, and as Judge of the 380th Judicial District Court presiding over and issuing favorable rulings in cases in which the Defendant

and Stacy Stine Cary are parties." Superseding Indictment, Counts I-VIII. As the State explained in closing argument: "Because we've got three methods of proving our case. We've alleged inducing her to run. They're inducing her to continue to run, and to rule." TR 9 at 18. The evidence of each of these, however, is insufficient, and none of them can support the conviction.

## II.

## ARGUMENTS REGARDING ISSUES PRESENTED

A.    **Issue 1: The Court Should Reverse Ms. Cary's Bribery Convictions Because The State Affirmatively Negated The Element Of Bribery By Something Other Than "Political Contributions," And The Evidence Was Therefore Insufficient.**

The State's bribery theory was an attempt to shoehorn potential election reporting and campaign finance issues into a bribery case. It does not fit. Justice FitzGerald's dissent accurately described this case as "a completely misdirected and unsupported prosecution and conviction that are not supported by law." Dissenting Opinion at 9.

Ms. Cary did not commit bribery or any of the other crimes charged, each of which includes bribery as an element. In particular, the State charged Ms. Cary with, and the jury was only charged on, bribery by something other than a "political contribution," which requires a substantially lower level of proof than bribery by "political contribution." But the State affirmatively negated an essential

Appellant's Brief--Page 18

element of the crime by proving that the alleged bribery could only have been through "political contribution[s]."

As explained above, the only sections of the bribery statute under which Ms. Cary was charged, section 36.02(a)(1) and (2), do not apply when the alleged "benefit" offered or conferred is "a political contribution as defined by Title 15, Election Code." Tex. Pen. Code § 36.02(d). In this case, however, the State's evidence for the alleged benefit falls squarely within the phrase, "political contribution as defined by Title 15, Election Code." Accordingly, the evidence of bribery is insufficient because the State failed to prove bribery beyond a reasonable doubt by something other than a political contribution.

Title 15 of the Election Code defines a "political contribution" as "a campaign contribution or an officeholder contribution." Tex. Election Code § 251.001(5). A "campaign contribution" is "a contribution to a candidate or political committee that is offered or given with the intent that it be used in connection with a campaign for elective office." Tex. Election Code § 251.001(3). A "contribution" is "a direct or indirect transfer of money, goods, services, or any other thing of value and includes an agreement made or other obligation incurred, whether legally enforceable or not, to make a transfer. The term includes a loan or extension of credit, other than those expressly excluded by this subdivision…." Tex. Election Code § 251.001(2). Neither of the express exclusions apply here.

In other words, a "political contribution" includes a direct or indirect transfer of anything of value, including a loan, that is offered or given to a candidate or political committee with the intent that it be used in connection with a campaign for elective office.

Since a "political contribution" is an exception to the subsections charged, under the Texas Penal Code, the State had to negate the exception in the indictment and prove beyond a reasonable doubt that Ms. Cary committed bribery through something other than political contributions. *See* Tex. Penal Code § 2.02 (b). The indictment only charged bribery other than by a political contribution. *See* Superseding Indictment, Counts I-VII. Accordingly, the jury was not instructed on, and did not return a verdict on, bribery under the much stricter standard required for political contributions, and the evidence would have been insufficient had they been so charged. The State's proof, however, not only failed to negate bribery by political contribution beyond a reasonable doubt, but its theory and evidence could ***only*** potentially support bribery by political contribution.

In this case, according to the State's own theory, the "benefit" that Ms. Wooten allegedly received under the bribery statute was money that was transferred from the Ms. Cary's accounts to Mr. Spencer and then to the Wooten campaign for use by the campaign to pay for campaign expenses. According to the State, this was done at times when the campaign had not otherwise raised enough

money to pay the bills. Thus, the State's own theory of bribery was that the benefit was a direct or indirect transfer of value with the intent that it be used to benefit the campaign—a "political contribution as defined by Title 15, Election Code."

For example, in opening statement, the prosecutor described the State's theory and evidence as follows:

> So, what Stacy Cary did was she, with her means, she secretly financed a candidate, Suzanne Wooten, to run against the presiding judge of the 380th Judicial District Court, Charles Sandoval.

TR 3 at 12. Referring to the instances in the Superseding Indictment's bribery counts in which Ms. Cary transferred money to Mr. Spencer, the prosecutor continued:

> But in those instances, what is that money used for? That money is used to run Suzanne Wooten's campaign. Without this money, Suzanne Wooten can't fund her campaign, and it was a very expensive campaign, over a hundred thousand dollars.

TR 3 at 21. The prosecutor also characterized "all this money that went to Stephen Spencer" that "came from Stacy Cary" as "de facto loans" to the Wooten campaign. TR 3 at 22.

At trial, the State's accounting and summary witness, Kyle Swihart, combined the documentary evidence into charts to support this theory. Mr. Swihart used State's Exhibit 94, a summary chart, to argue that Ms. Cary transferred money to Mr. Spencer, that Mr. Spencer used the money for Wooten campaign expenses, and that Mr. Spencer later invoiced the campaign when the

campaign had raised the money to reimburse him. TR 11 at 7720 (Exh. 94); TR 6 at 212-13, TR 7 at 9-17, 19-41 (Swihart testimony explaining Exhibit 94). Mr. Swihart testified:

> Q: Does there appear -- can you see any explanation for how the expenses are being billed or given to Ms. Wooten?
>
> A: It appears that he will bill for an amount that seems like she is able to pay out of her campaign account on that date.

TR 7 at 59.

> Mr. Swihart continued:
>
> Q. So, then the benefit then would be a short-term-no-interest loan?
>
> A. If you want to characterize it as that, I mean, that's one way to characterize it. All I know is when you see the money that came from Stacy Cary and then it was used by Stephen Spencer to benefit the campaign, I think that speaks for itself.

TR 7 at 224.

In closing argument, the prosecutor reiterated that, under the bribery statute as charged, the alleged "benefit" to the "recipient" (Ms. Wooten), was money that went to the Wooten campaign to pay for campaign expenses. According to the prosecutor, "But when we look at all of this money that [Stacy Cary] gave [Stephen Spencer], it's clear -- and Stephen Spencer will even say this that without Stacy Cary's money, Suzanne Wooten has no campaign." TR 9 at 41-42; *see also* TR 9 at 44 ("And if we look at this, we can actually see these are real expenses

[Mr. Spencer] used on the campaign.")  And again in closing, the prosecutor referred to the money that Mr. Spencer spent on the campaign as a loan facilitated by Stacy Cary's money: "It's in effect an interest-free loan.  If [Ms. Wooten] lent the money to her campaign herself, she doesn't get it back."

As the foregoing demonstrates, the State's theory and evidence was that the benefit was a direct or indirect transfer of value with the intent that it be used to benefit the campaign—squarely within the definition of a "political contribution as defined by Title 15, Election Code."  Tex. Penal Code §36.02(d).

Additionally, by failing to charge bribery by political contribution under section 36.02(a)(4), as it should have, the State avoided the stringent proof requirements of that subsection, which the State clearly did not meet.  *See* Dissenting Opinion at 11.

The Majority Opinion in the Court of Appeals does not dispute this.  It argues, however, that the transfers exceeded the amount of allowable contributions and were not properly reported by the Wooten campaign.  *See* Majority Op. at 62.  Whether they were reported, not reported, not reported properly, legal, or illegal, however, does not change the fact that they are still "political contributions *as defined by* Title 15, Election Code."  *See* Tex. Penal Code § 36.02(d) (emphasis added).  As the Dissent correctly points out, "the definitions of 'contribution,' 'campaign contribution,' and 'political contribution' do not incorporate these other

legal requirements. ***In other words, an illegal political contribution is still a political contribution***.” Dissenting Opinion at 12 (emphasis added). This is so for at least two reasons.

First, the “Definitions” in Title 15 of the Election Code are in section 251.001. That section defines “political contribution” only in terms of its nature and purpose—a direct or indirect transfer of anything of value, including a loan, that is offered or given to a candidate or political committee with the intent that it be used in connection with a campaign for elective office. On the other hand, the various rules governing permissible amounts and required reporting of a “political contribution,” which govern whether the contribution is legal or illegal, are set out in subsequent sections of Title 15. They do not change ***the definition*** of “political contribution” in section 251.001.

Second, the bribery statute itself evinces an intent to exclude all “political contribution[s]” from sections 36.02(a) (1), (2), and (3), regardless of whether they comply with the rules for political contributions or not. Section 36.02(d) of the bribery statute excludes from those subsections “a political contribution as defined by Title 15, Election Code, or an expenditure ***made and reported in accordance with*** Chapter 305, Government Code,” which deals with lobbying. Tex. Penal Code § 36.02(d) (emphasis added). Thus, the Legislature required lobbying expenditures under Chapter 305 of the Government Code to comply with the rules

and reporting requirements of that chapter in order to be excluded, but it did not do so for political contributions. This indicates that the Legislature intended all "political contributions," whether or not they were made and reported in accordance with Title 15 of the Election Code, to be excluded from sections 36.02(a)(1), (2), and (3).

In the appeal of Stacy Cary's husband's case, a different three-judge panel of the Dallas Court of Appeals unanimously reversed all of David Cary's convictions. The court agreed that the State had failed to prove bribery by something other than a political contribution beyond a reasonable doubt. David Cary was charged with the same crimes as Stacy Cary, but his trial was separate and took place after hers. The State relied on the same theories and generally the same evidence in David Cary's case. The Dallas Court of Appeals held: "We conclude that the State's evidence proved that the only benefits to Wooten were the transfers from Stacy Cary to Spencer, which the State argued were payments made to fund her campaign. As a result, the State did not meet its burden to prove bribery beyond a reasonable doubt by something other than a political contribution." App. A (*Cary v. State*, No. 05-13-01010, slip op. at 11 (Tex. App.—Dallas, March 25, 2015)).

The main difference between this appeal and David Cary's appeal is that this "political contribution" issue was unassigned error in Ms. Cary's appeal, whereas it was specifically raised in David Cary's appeal. Nevertheless, in this appeal,

Justice FitzGerald raised the "political contribution" issue in his dissent and would have reversed Ms. Cary's convictions based on it.

This Court can and should reverse Ms. Cary's convictions despite the fact that this error was unassigned. The Court has repeatedly reaffirmed its fundamental ability to review unassigned errors in the interests of justice. *See, e.g., Pfeiffer v. State*, 363 S.W.3d 594, 599 (Tex. Crim. App. 2012) (affirming ability to review unassigned errors); *Carter v. State*, 656 S.W.2d 468, *passim* (Tex. Crim. App. 1983) (*en banc*) (same).

The dissent in the Court of Appeals eloquently sets forth the reasons for reviewing this error:

> A serious concern is that the bench and bar will construe the majority opinion as approval of a prosecution brought under sections 36.02(a)(1) and (a)(2), notwithstanding that the foundation of the case is built upon political contributions. Another concern is that the State failed to prove a substantial and critical element of the offense. Not only did the State fail to prove an element, the State also proved appellant was not guilty of the crime charged. By disproving an element, that is, by proving the funds were political contributions, the State proved appellant did not commit and could not have committed the offenses charged and thus could not legally be convicted of a criminal offense under sections 36.02(a)(1) and (a)(2). A conviction for conduct that does not constitute an offense under the law is an injustice we may not ignore. Bribery charges, as serious as they are, must be properly brought and proved under the appropriate statutory provisions.
>
> The State, in seeking a conviction under sections 36.02(a)(1) and (a)(2), sidestepped the obligation imposed by section 36.02(a)(4) to produce direct evidence of an express agreement and ignored the clear application of section 36.02(a)(4). An affirmance gives the seal of

approval to a completely misdirected and unsupported prosecution
and conviction that are not supported by law.

Dissenting Opinion at 8-9. In addition, it would be a serious injustice if the results

in Stacy Cary's and David Cary's cases were different because of a fundamental

error that was unassigned in one case but raised in the other.

B. **Issue 2: The Evidence Was Insufficient To Prove The Requisite Official Action Intended To Be Exchanged For The Alleged Benefit, As Required By The Bribery Statute.**

The bribery statute requires that the alleged benefit to the recipient must be

intended to be "consideration," "for the recipient's decision, opinion,

recommendation, vote, or other exercise of discretion as a public servant," in the

case of subsection (a)(1), or "as consideration for the recipient's decision, vote,

recommendation, or other exercise of official discretion in a judicial or

administrative proceeding", in the case of subsection (a)(2). Tex. Penal Code §

36.02(a)(1) (2).[4] Here, there was insufficient evidence to support the three types of

consideration charged.

This Court has held that the "as consideration for" language in Penal Code

section 36.02(a)(1) and (a)(2), refers to "a bilateral agreement--in effect an illegal

contract to exchange a benefit as consideration for the performance of an official

---

[4] The bribery statute states that "[a] person commits an offense if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another...any benefit as consideration for the recipient's decision, opinion, recommendation, or vote, or other exercise of discretion as a public servant, party official, or voter [or in a judicial or administrative proceeding]." Tex. Pen. Code § 36.02(a)(1), (a)(2).

function." *McCallum v. State*, 686 S.W.2d 132, 136 (Tex. Crim. App. 1985).

Because the statute proscribes "offering" or "agreeing to confer" a benefit in exchange for official consideration, the benefit need not actually be accepted by the public official, but there must be proof beyond a reasonable doubt that the benefit was at least offered to the public official *in exchange for the consideration*. *See Martinez v. State*, 696 S.W.2d 930, 933 (Tex. App.—Austin 1985, pet. ref'd).

The indictment charged, and the jury was instructed on, three possible types of consideration from Ms. Wooten in return for the alleged benefit of money transferred to her campaign: (1) becoming a candidate for judge; (2) continuing to run for judge; and (3) making favorable rulings as a judge. Superseding Indictment, Counts I-VII; TR 9 at 11; *see* Dissenting Opinion at 15-20. The evidence of each was insufficient.

First, becoming a candidate for judge cannot satisfy the consideration under the bribery statute because the bribery statute does not apply to a decision by a citizen to become a candidate. The relevant subsection of the bribery statute requires a benefit "as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant, party official, or voter." Tex. Pen. Code § 36.02(a)(1).[5] In deciding to become a

---

[5] Section 36.02(a)(2) does not apply to elections. It applies only to "a judicial or administrative proceeding."

candidate, Ms. Wooten was not, and was not alleged to have been, a "party official or voter." In making a decision to run for office, she was not a "public servant," either.

The Texas Penal Code defines "public servant" as including "a candidate for nomination or election to public office." Tex. Pen. Code § 1.07(a)(41). "Public servant," however, does not include a potential candidate or someone who has not yet become a candidate, which is what Ms. Wooten was when she decided to become a candidate. *See* Dissenting Opinion at 15.

The Majority Opinion does not dispute this. Instead, it assumes this argument to be correct, without deciding, and relies on the other two types of alleged consideration. *See* Majority Opinion at 51-52.

Second, there was no evidence to support the idea that a benefit was conferred to Ms. Wooten for her to continue to be a candidate at some time after she had become a candidate and therefore a "public official." For example, there was no evidence that Ms. Wooten considered dropping out of the race or that anyone thought she needed inducement to stay in once she became a candidate. There was evidence that Ms. Cary transferred money to Spencer who spent it on the campaign and that Ms. Wooten did not drop out of the race, but this is not nearly enough to show specific intent. As the Dissent explains:

> But the State did have to prove that appellant or someone in league
> with appellant conferred benefits on Wooten as consideration for—

that is, in exchange for—Wooten's staying in the race….Absent evidence that appellant, her husband, or Spencer conferred benefits on Wooten with the intent of accomplishing an exchange of benefits for Wooten's decision to stay in the race, any finding that appellant, her husband, or Spencer had the proscribed intent is based on speculation, not evidence, and certainly not proof beyond a reasonable doubt.

Dissenting Opinion at 16-17 (citing *McCallum v. State*, 686 S.W.2d 132, 135-36 (Tex. Crim. App. 1985) (reversing a conviction in which a litigant bought champagne for a juror because there was insufficient evidence that the benefit was "in exchange for or in consideration of her vote as a juror").

Third, the evidence was insufficient to show that the transfers from Ms. Cary to Mr. Spencer, which were used to fund the campaign, were consideration for favorable rulings by Ms. Wooten as a judge. There was evidence that Ms. Cary's husband believed that the trial judge in his child custody dispute, who Ms. Wooten ran against, was vindictive and biased against him. Indeed, there was substantial evidence that the judge, Charles Sandoval, had a reputation for being vindictive and biased and was considered one of the worst judges in the State. TR 4 at 95-96, TR 6 at 35-36, TR 8 at 45, 55. There was also evidence that the opposing counsel in Mr. Cary's child custody case was known to be very close to Judge Sandoval and one of his strongest supporters. TR 8 at 45. There was not, however, evidence that Ms. Wooten had any idea that the Carys were involved with Spencer or were transferring money to him. Thus, she would not have known for whom to rule favorably.

There was no evidence that Ms. Wooten even knew the Carys or had any idea that either one of them was involved in paying Mr. Spencer. For example, the State's exhaustive review of email and phone records failed to reveal a single communication between Ms. Wooten and either of the Carys. *See* TR 11 (State's Exhs 77-83 (Wooten, Spencer, D. Cary, S. Cary phone records); State's Exhs 8A-C, 11-15, 17-20, 22-23, 29, 35, 40, 72, 154-55, 160, 172, 201-203 (emails introduced). Indeed, the evidence affirmatively demonstrates that Ms. Wooten did ***not*** know about the Carys or what they were doing and that the Carys did not believe she did. It showed that Mr. Spencer "partitioned off" Ms. Wooten from the Carys. TR 6 at 43. It also showed that Mr. Spencer never mentioned the Carys to Ms. Wooten, and that she did not know about their relationship with Mr. Spencer. TR 6 at 39-40, 42-43. Specifically, Mr. Spencer did not tell Ms. Wooten that the Carys were paying him money. TR 6 at 43.

There was no contrary evidence. Even the State's own investigator, after being asked about whether Ms. Wooten knew anything about the Carys, did not identify any evidence or information suggesting that she did. TR 7 at 238-39.

There was also no evidence that either of the Carys, and particularly Ms. Cary, erroneously believed that Ms. Wooten knew of their involvement with Spencer. Thus, there is no evidence that the judge who was supposedly bribed for favorable rulings knew who was doing the alleged bribing, or that the people who

allegedly wanted favorable rulings, in particular Ms. Cary, thought the judge knew who they were.

As the Dissent put it, "The evidence is equally consistent with the proposition that appellant merely hoped or believed that Wooten would make better rulings than Judge Sandoval had.  Under *McCallum*,[6] such evidence is not sufficient to prove bribery."  Dissenting Opinion at 18.

The evidence about what happened after Ms. Wooten became a judge supports the lack of any bribery.  When Judge Wooten had an opportunity to preside over David Cary's divorce/child custody case—the matter that was of extreme importance to him--she recused herself *sua sponte* because Mr. Cary's opposing counsel had been Judge Wooten's campaign treasurer, which Judge Wooten thought could have made her appear biased ***against*** Mr. Cary.  TR.11 at 1734 (State Tr. Ex. 7); Tr. 11 at 2460 (State Tr. Ex. 64 at 3-4).

Judge Wooten did not recuse herself from a lawsuit between Ms. Cary and a lawyer for Mr. Cary's ex-wife, and she made some discovery rulings both for and against Ms. Cary in that case, but she did nothing that could in any way suggest bribery.  *See* Dissent at 17-18.  Moreover, Ms. Cary voluntarily dismissed that case before any rulings on the merits, demonstrating that the case had no importance at all compared to Mr. Cary's child custody case.  TR 3 at 215-17.

---

[6] *McCallum v. State*, 686 S.W.2d 132, 134-35 (Tex. Crim. App. 1985).

Under the *Jackson*[7] standard of sufficiency review, "juries are not permitted to come to conclusions based on mere speculation or factually unsupported inferences or presumptions." *Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). This is the only way, however, that a jury could have found the requisite consideration.

**C.**    **Issue 3:  The evidence was insufficient to prove that Ms. Cary had the requisite intent to commit bribery.**

In pertinent part, the bribery statute requires that the defendant "intentionally or knowingly offers, confers, or agrees to confer...any benefit as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant" or "in a judicial or administrative proceeding." Tex. Pen. Code § 36.02(a)(1), (2). An offer to a public servant of a benefit alone might violate the gift statute, but it is not a bribe. *See Hubbard v. State*, 668 S.W.2d 419, 421 (Tex. App—Dallas 1984, pet. granted on other grounds) (distinguishing bribery and gift statutes). The plain language of the bribery statute requires that the defendant must intend or know that the benefit is "consideration for" an action or decision by the public servant acting as a public servant.

The law of parties under section 7.02(a) of the Texas Penal Code does not change the intent requirement for a substantive crime. Under section 7.02(a),

---

[7] *Jackson v. Virginia*, 443 U.S. 307, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979); *see Winfrey v. State*, 2013 Tex. Crim. App. LEXIS 431, 10-12 (Tex. Crim. App. Feb. 27, 2013) (recognizing *Jackson*).

every person charged with a crime must be shown beyond a reasonable doubt to have the same intent that the crime requires. *See Ex parte Thompson*, 179 S.W.3d 549, 553-54 (Tex. Crim. App. 2005) ("What matters under § 7.02(a) is the criminal *mens rea* of each accomplice; each may be convicted only of those crimes for which he had the requisite mental state."). "[A defendant] is criminally responsible for the offense committed by [a co-defendant] only if the evidence shows that she *knew* [the co-defendant's] *unlawful intent* when she acted to promote or assist in his conduct." *Hill v. State*, 883 S.W.2d 765, 771 (Tex. App.--Amarillo 1994, pet. ref'd) (emphasis in original).

In this case, it requires speculation to conclude that any bribery occurred at all. The State's theory is that Mr. Spencer delayed sending bills until the campaign's fundraising could catch up, so that the "benefit" was being able to spend money earlier than the campaign otherwise should have. There was no evidence, however, that Ms. Wooten knew anything about this alleged benefit because there was no evidence that she understood that expenses allegedly should have been recognized earlier.

As speculative as the existence of bribery was, the idea that Ms. Cary knew about it or had the specific intent "to promote or assist it," as required, is even further removed. *See* Tex. Penal Code § 7.02(a). Even in the light most favorable to the State, there was no evidence that Ms. Cary knew what Mr. Spencer was

doing with the money she transferred beyond perhaps generally using it for the Wooten campaign. Even assuming for the sake of argument that someone offered Ms. Wooten a benefit in exchange for an official action (of which there is no evidence), there is no evidence that Ms. Cary knew anything about it.

Intent to provide benefits to a campaign or even to violate campaign finance laws is not intent to commit bribery. As the Dissent explains, "For all the evidence shows, appellant may have helped finance Wooten's campaign in the mere hope of influencing Wooten—or in the mere hope of defeating Judge Sandoval—without knowledge of any agreement Spencer may have struck with Wooten and without any intent to promote any such illegal agreement." Dissenting Opinion at 20. The Dissent correctly concluded that there was insufficient evidence of intent in this case. *See id.*

**D.** **Issue 4: The Evidence Was Insufficient To Support Ms. Cary's Conviction For Engaging In Organized Criminal Activity And Money Laundering.**

    **1.** **The Evidence of Engaging In Organized Criminal Activity Was Insufficient Because The Evidence Of The Predicate Offenses Was Insufficient.**

Count I of the Superseding Indictment charges Engaging in Organized Criminal Activity ("EOCA"), under section 71.02(a) of the Texas Penal Code. The evidence was insufficient to sustain Ms. Cary's conviction because there was

insufficient evidence of the predicate offenses under the EOCA statute that are charged in the Superseding Indictment.

In order to commit the crime of EOCA, the Texas Penal Code requires, in pertinent part, proof beyond a reasonable doubt that a person "establish, maintain, or participate in a combination...to commit or conspire to commit one or more of" a list of predicate crimes. Tex. Pen. Code § 71.02(a). The predicate crimes are an essential element of the crime. *Id*.

In this case, the State charged three possible predicate crimes: bribery, money laundering, and tampering with a government record. Superseding Indictment, Count I. The evidence for each is insufficient to sustain a conviction of EOCA.

### a. **Predicate Offense Of Bribery.**

The evidence was insufficient to sustain bribery as a predicate crime for the reasons set forth above.

### b. **Predicate Offense Of Money Laundering.**

The evidence of money laundering as a predicate offence for EOCA is insufficient because the Superseding Indictment charges bribery as the only predicate criminal activity for money laundering, and the evidence of bribery is insufficient.

The relevant portion of the Texas money laundering statute makes it a crime if a person "knowingly...finances or invests or intends to finance or invest funds that the person believes are intended to further the commission of criminal activity." Tex. Pen. Code § 34.02(a)(4). For purposes of this case, "[c]riminal activity" means a felony offense. Tex. Pen. Code § 34.01(1).

The only predicate "criminal activity" alleged in the Superseding Indictment in the EOCA count for money laundering is bribery. Superseding Indictment, Count I. The evidence is insufficient to sustain bribery as a predicate criminal activity for the reasons set forth above.

### c. Predicate Offense Of Tampering With A Government Record.

The third predicate crime for EOCA is tampering with a government record under section 37.10(a)(5) of the Texas Penal Code. That section makes it a crime if a person "makes presents, or uses a governmental record with knowledge of its falsity." Tex. Pen. Code §37.10(a)(5).

The Superseding Indictment charges Ms. Cary with engaging in organized activity based on the following allegation:

> **Tampering with a Government Record**, in that Suzanne H. Wooten did then and there, with intent to defraud and harm another, namely, the State of Texas, the Texas Ethics Commission, and the citizens of Texas, intentionally and knowingly make, present, and use a governmental record with knowledge of its falsity, to-wit: prepared, swore, and affirmed a Personal Financial Statement that was submitted to the Texas Ethics Commission and did not list and report

all gifts and loans, as required by Texas Government Code Sec. 572.023, omitting the Defendant, David Cary, and James Stephen Spencer under the heading "Gifts," and the heading "Personal Notes and Lease Agreements," when in truth and in fact, [Ms. Wooten] had received gifts and loans from the Defendant, Stacy Stine Cary, and James Stephen Spencer during the calendar year 2008....

Superseding Indictment, Count I.

The tampering with a government record predicate crime was based on Ms. Wooten's Personal Financial Statement—a document that a candidate must file. *See* Superseding Indictment, Count I. The State's theory was that the payments made from Stacy Cary to Spencer, some of which Spencer used to pay for campaign expenses, should have been reported on Ms. Wooten's Personal Financial Statement as gifts or loans to Ms. Wooten **personally**. *See* Tex. Government Code § 572.023(a) (describing the personal financial statement as an accounting of the individual's financial activity).

To prove a violation of EOCA based on tampering with a government record under Texas Penal Code §37.10(a)(5), the State had to prove that Ms. Cary, Ms. Wooten, and at least one other person agreed that Ms. Wooten would fill out the Personal Financial Statement, knowingly omit information required to be disclosed, and intend to harm/defraud someone in doing so. *See Opokuofosu v. State*, 1998 Tex. App. LEXIS 903, *16 (Tex.App. – Texarkana 1998, pet. ref'd) ("[A] conviction under *Section 37.10(a)(5), (d)* requires a showing of the knowledge of the document's falsity *and* the intent to harm or defraud.").

As an initial matter, the evidence is insufficient to prove that the Personal Financial Statement was false. It is important to note that the Superseding Indictment concerns Ms. Wooten's ***Personal*** Financial Statement, as opposed to a campaign finance report. According to the Texas Government Code, the Personal Financial Statement concerns the financial activity of the ***individual*** and his or her family, rather than the campaign. Section 572.023(a) states: "A financial statement must include an account of the financial activity ***of the individual*** required by this subchapter to file a financial statement and an account of the financial activity ***of the individual's spouse and dependent children*** if the individual had actual control over that activity during the preceding calendar year." Tex. Government Code § 572.023(a) (emphasis added). Accordingly, the reporting of gifts or loans on the Personal Financial Statement applies to gifts or loans to the candidate, not to the campaign. *See id.*

Here, according to the State's theory, the supposed gifts or loans were the payments from Stacy Cary to Mr. Spencer that he used to pay for campaign expenses. TR 9 at 44. Those were all reimbursed from campaign funds. TR 7 at 185-86. There were no transfers, payments, or loans to Ms. Wooten at all. Thus, there were no unreported loans or gifts to Ms. Wooten, individually. The State went to great lengths to try to show that Ms. Wooten's ***campaign*** disclosures were

Appellant's Brief--Page 39

incorrect, but the State did not prove that her **_Personal_** Financial Statement was false.

Additionally, at trial, there was no evidence that Ms. Cary had even heard of a Personal Financial Statement, much less knew the information they had to include, or how Ms. Wooten was filling hers out. There was certainly no evidence that Ms. Cary had any input into Ms. Wooten's Personal Financial Statement.

There was also no evidence that Ms. Cary knew that money spent on Ms. Wooten's campaign allegedly should have been characterized as a **_personal_** loan or gift to Ms. Wooten. The State's underlying explanation was that expenses paid by a campaign consultant must be recognized by the campaign when the consultant pays the expense, or when the amount of the expense is determinable, rather than after the consultant sends the campaign a bill, and if they are not recognized at that time, then they should be considered a loan or a gift. But there was no evidence that Ms. Wooten, much less Ms. Cary, knew or should have known this supposed rule.

The Majority Opinion by the Court of Appeals in this case did not address the sufficiency of evidence of tampering with a government record. The Dissent, however, correctly concludes that "there is no evidence in the record that appellant intentionally participated in any combination for the purpose of having Wooten

commit the offense of tampering with a government record." Dissenting Opinion at 21.

In David Cary's appeal, the panel of the Dallas Court of Appeals unanimously agreed that the evidence of tampering with a government record was insufficient on a materially identical factual record. The court held:

> We conclude that the State offered no evidence that Wooten's Personal Financial Statement omitted alleged loans and gifts from [David Cary], Stacy Cary, or Spencer because there is no evidence of loans or gifts from them to Wooten individually. We further conclude that the State offered no evidence of appellant's knowledge that Wooten allegedly falsified her Personal Financial Statement.

App. A (*Cary v. State*, No. 05-13-01010, slip op. at 15-16 (Tex. App.—Dallas, March 25, 2015).

There was insufficient evidence to support tampering with a government record.

### 2. The Evidence Of Money Laundering Was Insufficient.

Count VIII of the Superseding Indictment charges money laundering in violation of section 34.02(a)(4) of the Texas Penal Code. Superseding Indictment, Count VIII. As set forth above, money laundering requires a predicate crime, and bribery was the only predicate crime that Count VIII charges. For the reasons set forth above, there is insufficient evidence of bribery. Therefore, the evidence of money laundering is insufficient.

**CONCLUSION**

Ms. Cary respectfully requests that the Court reverse her convictions.

Respectfully submitted,


____/s/ John M. Helms_____
John M. Helms
Texas Bar No. 09401001
BRODEN, MICKELSEN, HELMS &
SNIPES, LLP
2600 State Street
Dallas, Tx 75204
Tel:  (469) 951-8496
Fax: (214) 720-9594
john@johnhelmslaw.com

ATTORNEY FOR APPELLANT,
STACY STINE CARY


**CERTIFICATE OF SERVICE**

This certifies that a true and correct copy of this instrument has been served on counsel of record on May 15, 2015, as follows:

Joseph Corcoran (lead appellate counsel)  (via ECF and electronic mail)
Office of the Attorney General
P.O. Box 12548
Austin, Texas 78711


____/s/ John M. Helms_____
John M. Helms

## **CERTIFICATE OF COMPLIANCE**

Pursuant to Rule 9(i)(3) of the Texas Rules of Appellate Procedure, I hereby certify that the word count of this reply brief, excluding the list of excluded sections under Rule 9(i)(1), is 9,788.  I have relied on the word count of the computer program used to prepare the document for this word count.

____/s/ John M. Helms_____
John M. Helms

# APPENDIX A



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-13-01010-CR

**DAVID CARY, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

On Appeal from the 366th Judicial District Court
Collin County, Texas
Trial Court Cause No. 366-81636-2011

# OPINION

Before Justices Bridges, Lang-Miers, and Myers
Opinion by Justice Lang-Miers

Appellant David Cary was charged with eight felonies—six counts of bribery, one count

of money laundering, and one count of engaging in organized criminal activity. After finding

appellant guilty as charged, the jury assessed concurrent sentences of fourteen years in prison for

each offense. On appeal appellant argues that (1) the evidence is legally insufficient to support

his convictions, (2) he received ineffective assistance of counsel, and (3) the bribery statute is

unconstitutional. We conclude that the State's evidence is legally insufficient to support

appellant's convictions. We reverse the trial court's judgments and render judgments of

acquittal.

## BACKGROUND

Appellant's convictions arise from the same evidence presented by the State in the

previous trial of his wife, Stacy Stine Cary. We described all of the evidence at great length in

our opinion in Stacy Cary's appeal. *See Cary v. State*, No. 05-12-01421-CR, 2014 WL 4261233 (Tex. App.—Dallas Aug. 28, 2014, pet. granted) (not designated for publication). Because the parties agree that the records in both cases are nearly identical,[1] we do not re-describe all of the evidence again here. Instead, we discuss pertinent evidence below as it pertains to the issues we must decide in this appeal.

## ISSUES ON APPEAL

Appellant raises six issues on appeal (several of which are different from the issues raised in Stacy Cary's appeal). In his first issue, appellant argues that the evidence is legally insufficient to support his bribery convictions because (1) the State's evidence proved an exception to the bribery statute, (2) there was no evidence of consideration, and (3) there was no evidence of intent. In his second issue, appellant argues that the evidence is legally insufficient to support his conviction for engaging in organized criminal activity because there was insufficient evidence of the alternative predicate offenses of bribery, money laundering, and tampering with a governmental record. In his third issue, appellant argues that the evidence is legally insufficient to support his conviction for money laundering because there was insufficient

---

[1] According to the State, the records are "materially identical." According to appellant, the only difference is that the following additional evidence was presented in appellant's case only:

- The jury heard evidence that the judge who was appointed to preside over appellant's modification proceeding after Suzanne Wooten recused herself made decisions in favor of appellant, including ordering that the children should live with appellant.

- James Stephen Spencer explained and put into context the email exchange between him and appellant dated June 9, 2009, concerning the Supreme Court's June 8, 2009 decision in *Caperton v. A.T. Massey Coal Co.*, 556 U.S. 868 (2009). Spencer testified that the reason he was interested in the *Caperton* decision was because of his ongoing concerns about the Family Law Foundation's potential influence over a judge in Tarrant County.

- The jury heard evidence that Wooten planned to voluntarily recuse herself in cases in which a party was represented by someone from her former law firm for approximately nine months after she separated from her firm, and the motion to recuse Wooten in Stacy Cary's case against Jennifer Cary was filed around the time her self-imposed decision to recuse was supposed to expire.

- Rick Robertson testified that while Wooten was on the bench he "found her to be a judge to follow the law," and there was nothing about her rulings that would suggest that she had been bribed.

- Two witnesses for the State testified that Wooten was ethical and had a strong reputation for ethics.

evidence of the sole predicate offense of bribery. In his fourth issue, appellant argues that he received ineffective assistance of counsel because his counsel admittedly failed to timely amend appellant's sentencing election so that punishment could be assessed by the trial court, which caused appellant to receive a longer sentence. In his fifth issue, appellant argues that the bribery statute is unconstitutional as applied because it impermissibly burdened his First Amendment right to exercise political speech. In his sixth issue, appellant argues that the bribery statute is facially unconstitutional because it is vague and overbroad. We only address appellant's first three issues because our resolution of those issues is dispositive of this appeal.

### STANDARD OF REVIEW

In evaluating the legal sufficiency of the evidence to support a criminal conviction, "reviewing courts are obliged to view all of the evidence in the light most favorable to the jury's verdict, in deference to the jury's institutional prerogative to resolve all contested issues of fact and credibility." *Delay v. State*, 443 S.W.3d 909, 912 (Tex. Crim. App. 2014). But sometimes, as in this case, "appellate review of legal sufficiency involves simply construing the reach of the applicable penal provision in order to decide whether the evidence, even when viewed in the light most favorable to conviction, actually establishes a violation of the law." *Id.*

### BRIBERY

**Applicable Law**

The bribery statute at issue in this case provides as follows:

(a) A person commits an offense if he intentionally or knowingly offers, confers, or agrees to confer on another, or solicits, accepts, or agrees to accept from another:

> (1) any benefit as consideration for the recipient's decision, opinion, recommendation, vote, or other exercise of discretion as a public servant, party official, or voter;

> (2) any benefit as consideration for the recipient's decision, vote, recommendation, or other exercise of official discretion in a judicial or administrative proceeding;

–3–

(3) any benefit as consideration for a violation of a duty imposed by law on a public servant or party official; or

(4) any benefit that is a political contribution as defined by Title 15, Election Code, or that is an expenditure made and reported in accordance with Chapter 305, Government Code, if the benefit was offered, conferred, solicited, accepted, or agreed to pursuant to an express agreement to take or withhold a specific exercise of official discretion if such exercise of official discretion would not have been taken or withheld but for the benefit; notwithstanding any rule of evidence or jury instruction allowing factual inferences in the absence of certain evidence, direct evidence of the express agreement shall be required in any prosecution under this subdivision.

(b) It is no defense to prosecution under this section that a person whom the actor sought to influence was not qualified to act in the desired way whether because he had not yet assumed office or he lacked jurisdiction or for any other reason.

(c) It is no defense to prosecution under this section that the benefit is not offered or conferred or that the benefit is not solicited or accepted until after:

(1) the decision, opinion, recommendation, vote, or other exercise of discretion has occurred; or

(2) the public servant ceases to be a public servant.

(d) It is an exception to the application of Subdivisions (1), (2), and (3) of Subsection (a) that the benefit is a political contribution as defined by Title 15, Election Code, or an expenditure made and reported in accordance with Chapter 305, Government Code.

(e) An offense under this section is a felony of the second degree.

TEX. PENAL CODE ANN. § 36.02 (West 2011) (internal footnote omitted).

**The Indictment**

The indictment charged appellant with bribery in counts two through seven in connection with six separate payments from Stacy Cary to James Stephen Spencer, Suzanne Wooten's campaign manager. For example, count two alleged that appellant,

on or about January 4, 2008, . . . did then and there intentionally and knowingly offer, confer, and agree to confer a benefit, other than a political contribution as defined by Title 15, Election Code, or an expenditure made and reported in accordance with Chapter 305 of the Government Code, to-wit: $50,000 to Suzanne H. Wooten, a public servant, to-wit: a candidate for the office of Judge of the 380th Judicial District Court and presiding Judge of the 380th Judicial District Court, as consideration for Suzanne H. Wooten's decision, opinion,

recommendation, vote, or other exercise of discretion as a public servant, and as consideration for Suzanne H. Wooten's decision, vote, recommendation, and other exercise of official discretion in a judicial proceeding, to wit: filing paperwork to run for Judge, proceeding and continuing with a campaign to unseat the incumbent elected Judge of the 380th Judicial District Court, and as Judge of the 380th Judicial District Court presiding over and issuing favorable rulings in cases in which [appellant] and Stacy Stine Cary are parties[.]

The allegations in the other five bribery counts differed only with respect to the date and amount of the transfer. The payments totaled $150,000 and occurred between January 4 and March 14, 2008. The jury charge tracked the indictment and instructed the jury that appellant could be found guilty as a principal or as a party to the offenses of bribery.

**Analysis**

Appellant was charged with bribery under penal code sections 36.02(a)(1) and 36.02(a)(2). As a result, the exception for political contributions found in section 36.02(d) applies, and under section 2.02(b) of the penal code,[2] it was the State's burden to prove beyond a reasonable doubt that the benefits to Wooten, in this case the payments to Spencer, were something other than political contributions. In his first issue, appellant argues that the evidence is legally insufficient to support his bribery convictions because the State failed to satisfy that burden. We agree.

We begin by looking to the relevant definitions in Title 15 of the Texas Election Code. Shown in context, the relevant provisions of the election code provide:

(2) "**Contribution**" means a direct or **indirect transfer of money**, goods, services, or any other thing of value and includes an agreement made or other obligation incurred, whether legally enforceable or not, to make a transfer. The term includes a loan or extension of credit, other than those expressly excluded by this subdivision, and a guarantee of a loan or extension of credit, including a loan described by this subdivision. The term does not include:

---

[2] Section 2.02(b) of the penal code states, "The prosecuting attorney must negate the existence of an exception in the accusation charging commission of the offense and prove beyond a reasonable doubt that the defendant or defendant's conduct does not fall within the exception." TEX. PENAL CODE ANN. § 2.02(b) (West 2011).

(A) a loan made in the due course of business by a corporation that is legally engaged in the business of lending money and that has conducted the business continuously for more than one year before the loan is made; or

(B) an expenditure required to be reported under Section 305.006(b), Government Code.

(3) "**Campaign contribution**" means a **contribution to a candidate** or political committee that is **offered or given with the intent that it be used in connection with a campaign for elective office** or on a measure. Whether a contribution is made before, during, or after an election does not affect its status as a campaign contribution.

(4) "Officeholder contribution" means a contribution to an officeholder or political committee that is offered or given with the intent that it be used to defray expenses that:

(A) are incurred by the officeholder in performing a duty or engaging in an activity in connection with the office; and

(B) are not reimbursable with public money.

(5) "**Political contribution**" means **a campaign contribution** or an officeholder contribution.

(6) "Expenditure" means a payment of money or any other thing of value and includes an agreement made or other obligation incurred, whether legally enforceable or not, to make a payment.

(7) "Campaign expenditure" means an expenditure made by any person in connection with a campaign for an elective office or on a measure. Whether an expenditure is made before, during, or after an election does not affect its status as a campaign expenditure.

TEX. ELEC. CODE ANN. § 251.001(2)–(7) (West 2010) (emphasis added).

Boiled down, the State's theory in this case was that the Carys secretly funded Wooten's campaign for elective office. And the only evidence of a benefit to Wooten in this case was that Stacy Cary gave money to Spencer and Spencer used it in connection with Wooten's campaign. During opening statements, for example, the State told the jury,

Without Stacy Cary's money that was given to Stephen Spencer, Suzanne Wooten does not win. Suzanne Wooten spends money on signs. She spends money on radio ads. She spends money on print ads. She spends money on direct mailers. She hires a consultant. None of these things are possible without the money being given to her.

–6–

During its case in chief, the State proved its theory through testimony and documentary evidence. During Spencer's direct examination by the State, for example, he repeatedly acknowledged that he used the money he received from Stacy Cary to pay for Wooten's campaign expenditures. Spencer's testimony was consistent with State's Exhibit 94, a compendium exhibit created by the State's fraud examiner, Kyle Swihart. Exhibit 94 shows the timing of the payments from Stacy Cary to Spencer, and which campaign expenses were paid using the money. Swihart testified at length about the evidence summarized in State's Exhibit 94. For example, with respect to the transfer of $50,000 from Stacy Cary to Spencer on January 4, Swihart explained that it was immediately used to pay Wooten's campaign consultant, Hank Clements:

> Q. All right. We've got these two payments to Hank Clements totaling $15,000, which happen to be just a few days after this $50,000 comes in. Absent this money from Stacy Cary, does Stephen Spencer have the money to pay for Hank Clements?
>
> A. No.
>
> Q. And absent this money from Stacy Cary, does Suzanne Wooten's campaign have the money to pay for Hank Clements?
>
> A. No.

With respect to the transfer of $25,000 from Stacy Cary to Spencer on February 4, Swihart testified that it was used to pay for additional campaign expenditures:

> Q. Okay. And then there's another -- appears to be another transfer from Stacy Cary?
>
> A. Yes, of $25,000 that posted to his account on February 4th of 2008.
>
> Q. All right. Now, after that post[ed] to his account, does he cut several more cashier's checks?
>
> A. Yes, he does.
>
> Q. Can you tell us what those cashier's checks are?
>
> A. It would be the Plano Profile cashier's check on February 5th.

Q. Okay.

A. The Cartwright Signs check on February 5th. Actually both of those together there for $3877 and $4036. And then the last Cartwright expenditure on February 8th of 2008.

Q. All right. So, absent this $25,000 from Stacy Cary, does Stephen Spencer have the funds to get these cashier's checks?

A. No, he does not.

Likewise, with respect to the transfer of $25,000 from Stacy Cary to Spencer on February 15,

Swihart testified that it was used to pay campaign expenditures:

Q. Okay. Now, the next thing I'd like to ask you about is this next transfer from Stacy Cary.

A. The one on February 15th?

Q. Yes, sir. Can you tell me about that?

A. That is another transfer that occurred. I believe that one may have been via check. And that occurred on February 15th.

Q. Okay. And so his balance after that transfer of $25,000 is how much?

A. It's $25,000.92.

Q. And so that occurs on the 15th. And on the 20th, does he draw two checks?

A. Yes, he does.

Q. Okay. And what are those checks for?

A. Those are for radio ads for KVIL and KRLD.

Q. And absent this $25,000 that he receives from Stacy Cary, does he have the funds to pay for these advertisements?

A. No, he does not.

Q. Okay. And absent this $25,000 from Stacy Cary, does the Suzanne Wooten Campaign account have the funds to pay for these advertisements?

A. No.

Finally, during closing argument, the State told the jury that Stacy Cary's money was not a political contribution because it "never goes into [Wooten's] account. It's never reported."

The State argues on appeal that the payments to Spencer for Wooten's benefit should not be considered political contributions because the evidence demonstrates that appellant "deliberately engaged in several deceptive practices to prevent the funds from being traced to him." We must confine our analysis, however, to the definitions found in the election code. And under the definition of "political contribution" in the election code, no exception is made for covert indirect transfers of money.

Additionally, under the applicable definitions in the election code, the money did not need to be transferred directly to Wooten's campaign account, nor did it need to be properly reported in Wooten's campaign filings, in order for it to constitute a political contribution. Instead, if Stacy Cary transferred money to Spencer with the intent that it be used in connection with Wooten's campaign, then, by definition, the money is a political contribution.

The State also argues that a conclusion that the benefits to Wooten were political contributions would lead to an absurd result because it would mean that anyone could covertly and indirectly fund a judge's campaign in exchange for the candidate's agreement to rule in his favor, as long as there is no evidence of an express agreement. We disagree. We are not sanctioning the conduct in this case, nor are we concluding that it was lawful. Instead, we conclude that the State did not satisfy its burden under the specific language in section 36.02 of the penal code and Title 15 of the election code. *See* TEX. PENAL CODE ANN. § 36.02; TEX. ELEC. CODE ANN. § 251.001(2)–(7).

The State also argues that a rational jury could have found that appellant did not intend for the transfers to Spencer to be used in connection with Wooten's campaign, and instead intended that the payments to Spencer "be used to obtain, by any means necessary, (1) a person

–9–

who would challenge the incumbent judge of the 380th Judicial District Court, despite the odds stacked against succeeding in such a challenge, and/or (2) a judge who would rule favorably in Appellant's custody and visitation proceedings, and/or rule in favor of his wife Stacy." The State contends that because of a difference between the amount Spencer spent on Wooten's campaign and the amount she reimbursed him, the jury could have inferred "that Appellant had no specific intent that every payment made by his wife be used specifically in connection with the campaign." But the State charged appellant with bribing Wooten, the State's theory was that the Carys funded Wooten's campaign, and the jury was asked whether the payments were made to Wooten as consideration for various actions on her part, including issuing rulings favorable to the Carys.

We recognize that the majority did not reach this conclusion in *Cary*. *See* 2014 WL 4261233, at *33–34. In that appeal, however, Stacy Cary did not raise the same issues as those presented here. For example, Stacy Cary did not raise the issue of whether the State failed to prove that the transfers from her to Spencer were not political contributions. Instead, Stacy Cary affirmatively argued in her appeal that the transfers to Spencer were compensation for services rendered under a consulting agreement. And the majority's discussion of unassigned error raised by the dissent was obiter dictum and not material to the majority's resolution of Stacy Cary's appeal.

We conclude that the State's evidence proved that the only benefits to Wooten were the transfers from Stacy Cary to Spencer, which the State argued were payments made to fund her campaign. As a result, the State did not meet its burden to prove bribery beyond a reasonable

–10–

doubt by something other than a political contribution.[3] We resolve appellant's first issue in his favor, reverse the convictions for bribery, and render judgments of acquittal.

## MONEY LAUNDERING

A person commits the offense of money laundering if he "knowingly finances or invests or intends to finance or invest funds that the person believes are intended to further the commission of criminal activity." TEX. PENAL CODE ANN. § 34.02(a)(4) (West 2011). In this case the State alleged that appellant,

> on or about and between January 4, 2008 and March 14, 2008, . . . did then and there, pursuant to one scheme and continuing course of conduct, knowingly finance, invest, and intend to finance and invest funds that [appellant] believed were intended to further the commission of criminal activity, to-wit: Bribery, and the aggregate value of said proceeds was $100,000 or more but less than $200,000[.]

In his third issue, appellant argues that the evidence is legally insufficient to support his conviction for money laundering because there is "insufficient evidence of the only predicate offense—bribery." The State was not required to prove bribery in order to convict appellant of money laundering. Instead, the State was only required to prove that appellant believed he was furthering the commission of bribery. But in this case, the State's only evidence was that appellant believed Stacy Cary was making what constitutes political contributions under the election code. And the political contributions Stacy Cary made are subject to the exception under the bribery statute. As a result, there is no evidence that appellant believed he was furthering the commission of bribery. We resolve appellant's third issue in his favor, reverse the conviction for money laundering, and render a judgment of acquittal.

---

[3] Because we conclude that the exception to the bribery statute was not negated, we do not need to address appellant's alternative arguments that the evidence is legally insufficient to support his bribery convictions because there is no evidence of consideration or intent.

–11–

A person commits the offense of engaging in organized criminal activity "if, with the intent to establish, maintain, or participate in a combination or in the profits of a combination, . . . the person commits or conspires to commit one or more [enumerated offenses]." *See* TEX. PENAL CODE ANN. § 71.02(a) (West Supp. 2014). In this case the State alleged that appellant engaged in organized criminal activity by committing or conspiring to commit three predicate offenses: bribery, money laundering, and tampering with a governmental record. *See id*. §§ (9) (bribery), (10) (money laundering), (13) (tampering with a governmental record).

We have concluded that the evidence is insufficient to support the convictions for bribery and money laundering; consequently, those predicate offenses will not support the conviction for engaging in organized criminal activity. The sole remaining alleged predicate offense is tampering with a governmental record.

**The Indictment**

In the indictment the State alleged that appellant engaged in organized criminal activity by tampering with a governmental record as follows:

> on or about and between September 19, 2007 and October 20, 2009, . . . with intent to establish, maintain, and participate in a combination and in the profits of a combination of three or more persons, namely, [appellant], Suzanne H. Wooten, Stacy Stine Cary, and James Stephen Spencer, did commit and conspire to commit the following offenses:
>
> . . .
>
> **Tampering with a Government Record**, in that Suzanne H. Wooten did then and there, with the intent to defraud and harm another, namely, the State of Texas, the Texas Ethics Commission, and the citizens of Texas, intentionally and knowingly make, present, and use a governmental record with knowledge of its falsity, to-wit: prepared, swore, and affirmed a Personal Financial Statement that was submitted to the Texas Ethics Commission and did not list and report all gifts and loans, as required by Texas Government Code Sec. 572.023, omitting [appellant], Stacy Stine Cary, and James Stephen Spencer under the heading "Gifts," and the heading "Personal Notes and Lease Agreements," when in truth

and fact [Wooten] had received gifts and loans from [appellant], Stacy Stine Cary, and James Stephen Spencer during the calendar year 2008;

and in furtherance of the conspiracy to commit said offenses [appellant] performed one or more overt acts, to-wit: communicated with other members of the combination, and organized, planned, and supervised the other members of the combination . . . .

*See id.* §§ 37.10(a)(5), 71.02(a)(13).

The governmental record at issue here is Wooten's Personal Financial Statement for calendar year 2008 that she filed with the Texas Ethics Commission as part of her judicial campaign. The State argued that appellant, Wooten, and at least one other person committed and conspired to commit tampering with a governmental record, specifically, falsifying Wooten's Personal Financial Statement by omitting loans and gifts she received from appellant, Stacy Cary, and Spencer.

**Applicable Law**

The government code requires a candidate or officeholder to file a Personal Financial Statement and, in that report, to disclose personal loans over $1,000 and personal gifts over $250 made or given to the reporting individual, the reporting individual's spouse, or the reporting individual's dependent child. TEX. GOV'T CODE ANN. § 572.023(a)(5), (7) (West 2012). As charged in this case, a person commits the offense of tampering with a governmental record if the person makes, presents, or uses a Personal Financial Statement with knowledge of its falsity and with intent to defraud or harm another. *See* TEX. PENAL CODE ANN. § 37.10(a)(5); *State v. Vasilas*, 198 S.W.3d 480, 484 (Tex. App.—Dallas 2006), *aff'd*, 253 S.W.3d 268 (Tex. Crim. App. 2008).

"Gift," "personal loan," and "personal note" are not defined in the statute. The ordinary meaning of "gift" is a voluntary transfer of property to another made gratuitously and without consideration. *Magness v. Magness*, 241 S.W.3d 910, 912 (Tex. App.—Dallas 2007, pet.

denied). The elements of a gift are (1) the intent to make a gift; (2) delivery of the property; and (3) acceptance of the property. *Id.* The ordinary meaning of "loan" is "money lent at interest." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1326 (1981). And "note" means "a written or printed paper acknowledging a debt and promising payment." *Id*. at 1544. The State's campaign finance expert, Ian Steusloff, testified that he understood "personal note" to include a "document that states that you agree to pay a specific amount to another person[.]"

**Analysis**

In his second issue, appellant argues that there is no evidence of unreported loans or gifts to Wooten individually; there is no evidence Wooten's Personal Financial Statement was false; and there is no evidence appellant knew about the existence or contents of Wooten's Personal Financial Statement. We agree.

All of the State's evidence, indeed its entire theory, was that the money Stacy Cary transferred to Spencer was used to benefit Wooten's judicial campaign. But the State's ethics expert testified that the Personal Financial Statement applied only to loans and gifts to the candidate, not to the campaign. And the State did not present any evidence that appellant, Stacy Cary, or Spencer directly or indirectly gave money to Wooten individually. In fact, Swihart, the State's fraud expert who investigated this case for four years, agreed that "there's not a single payment that went from either Dave or Stacy Cary to Suzanne Wooten" and "there's not even a situation where there's been a payment from either [of] the Carys to a third party who then turned around and forwarded that money to Judge Wooten[.]" Steusloff testified that he was sitting in the courtroom for a majority of the witnesses' testimony and he had "not heard of any gifts." And he agreed that if there was no evidence Wooten received a gift, then checking "Not Applicable" under "Gifts" on the Personal Financial Statement would be correct.

–14–

Having reviewed the entire record, we conclude that the State did not offer any evidence that appellant, Stacy Cary, or Spencer intended to make a gift of money to Wooten individually, that appellant, Stacy Cary, or Spencer delivered a gift of money to Wooten, or that Wooten accepted a gift of money from appellant, Stacy Cary, or Spencer.

We also conclude that the State did not offer any evidence that appellant, Stacy Cary, or Spencer loaned Wooten money. Wooten's Personal Financial Statement disclosed a loan to Wooten individually from Bank of America, and Swihart testified that "[a]s far as [he knew]" that was the only loan for Wooten's campaign. The State offered no evidence that Wooten signed a personal note in favor of appellant, Stacy Cary, or Spencer. And Steusloff testified that he believed to constitute a personal note "as a minimum, there would need to be a document that said 'I, Suzanne Wooten, promise to pay.'" The State offered no such document. We conclude that the State offered no evidence of a personal note or personal loan to Wooten individually.

Additionally, the State did not offer any evidence that appellant knew about the Personal Financial Statement, knew Wooten had to file such a statement, knew what the statement was required to include, or knew what Wooten disclosed when she filed it. The State concedes that there is "no direct evidence of [a]ppellant's knowledge of Wooten's campaign records or record filing requirements," but it argues that the jury could have inferred based on appellant's "blatant disregard for complying with any [reporting] restrictions [that] [a]ppellant must have intended for Wooten to omit him, his wife, and/or Spencer from her Personal Financial Statement as the bulk of her campaign resources." Based on this record, any such inference amounts to mere surmise or suspicion.

We conclude that the State offered no evidence that Wooten's Personal Financial Statement omitted alleged loans and gifts from appellant, Stacy Cary, or Spencer because there is no evidence of loans or gifts from them to Wooten individually. We further conclude that the

–15–

State offered no evidence of appellant's knowledge that Wooten allegedly falsified her Personal Financial Statement. Because there is no evidence to support any of the alleged predicate offenses, the conviction for engaging in organized criminal activity cannot stand. We resolve appellant's second issue in his favor, reverse the conviction for engaging in organized criminal activity, and render a judgment of acquittal.

## CONCLUSION

We conclude that the evidence is legally insufficient to sustain appellant's convictions for bribery, money laundering, and engaging in organized criminal activity. We reverse appellant's convictions and render judgments of acquittal. As a result, we do not need to address appellant's remaining arguments.


/Elizabeth Lang-Miers/
ELIZABETH LANG-MIERS
JUSTICE


Publish
TEX. R. APP. P. 47.2(b)

131010F.P05

–16–



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

DAVID CARY, Appellant

No. 05-13-01010-CR      V.

THE STATE OF TEXAS, Appellee

On Appeal from the 366th Judicial District
Court, Collin County, Texas
Trial Court Cause No. 366-81636-2011.
Opinion delivered by Justice Lang-Miers.
Justices Bridges and Myers participating.

Based on the Court's opinion of this date, the judgments of the trial court are
**REVERSED** and the appellant is hereby **ACQUITTED**.

Judgment entered this 25th day of March, 2015.